[No. C047961. Third Dist. Oct. 27, 2005.]

STEVEN J. CHRISTOFF, Plaintiff and Appellant, v.
UNION PACIFIC RAILROAD COMPANY, Defendant and Respondent.

COUNSEL

Law Office of Jonathan J. Zerin and Jonathan J. Zerin for Plaintiff and Appellant.

Reed Smith, Jayne E. Fleming; Michael L. Whitcomb, William H. Pohle, Jr., and Joseph P. Mascovich for Defendant and Respondent.

OPINION

**SIMS, Acting P. J.**—Plaintiff Steven J. Christoff appeals from summary judgment entered in favor of defendant Union Pacific Railroad Company (Union Pacific), in plaintiff's action alleging he was injured by a passing train while walking across a railroad bridge. Plaintiff contends triable issues exist regarding duty to warn and duty to remedy a danger. We shall affirm the judgment.

## SUMMARY JUDGMENT

A motion for summary judgment should be granted if the submitted papers show that "there is no triable issue as to any material fact," and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c) (section 437c).) A defendant meets his burden of showing that a cause of action has no merit if he shows that an element of the cause of action cannot be established, or that there is a complete defense. (§ 437c, subd. (p)(2).) Once the defendant has met that burden, the burden shifts to the plaintiff to show that a triable issue of material fact exists. (*Ibid.*)

In cases where the plaintiff would have the burden of proof by a preponderance of the evidence, the defendant moving for summary judgment must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true, or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff does not possess, and cannot reasonably obtain, needed evidence. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850, 854, 861 [107 Cal.Rptr.2d 841, 24 P.3d 493].)

We review the record and the determination of the trial court de novo. (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003 [4 Cal.Rptr.3d 103, 75 P.3d 30].) " 'First, we identify the issues raised by the pleadings, since it is these allegations to which the motion must respond; secondly, we determine whether the moving party's showing has established

facts which negate the opponent's claims and justify a judgment in movant's favor; when a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. . . .' " (*Waschek v. Department of Motor Vehicles* (1997) 59 Cal.App.4th 640, 644 [69 Cal.Rptr.2d 296].)

## THE COMPLAINT

On November 7, 2002, plaintiff filed a complaint alleging that, at 8:30 p.m. on March 12, 2002, he was injured by a passing Union Pacific train while he walked on a "pedestrian walkway" adjacent to train tracks on a railroad bridge that crosses over Arcade Creek parallel to Roseville Road. The air blast and suction from the passing train knocked plaintiff down and caused injuries. Plaintiff alleged defendant was aware that air blasts and suction from trains posed a danger to pedestrians on the pedestrian walkways, which was not readily apparent to persons unfamiliar with being in close proximity to moving trains. Defendant owed a duty to remove the danger or post warnings, and defendant breached the duty by failing to remove the danger, failing to post warnings, and negligently operating a train.

## THE SUMMARY JUDGMENT MOTION

Defendant moved for summary judgment. The notice of motion stated as grounds that defendant (1) acted with reasonable care, and (2) was not a legal cause of plaintiff's injuries. The memorandum of points and authorities argued (1) defendant had no duty to warn plaintiff of open and obvious dangers on its property; (2) defendant acted with reasonable care to prevent injury to trespassers, and (3) there was no evidence defendant's alleged failure to warn of danger was a cause in fact of plaintiff's injuries.[1]

The separate statement of undisputed facts asserted:

On the evening of March 12, 2002, plaintiff was walking along Roseville Road. Because the sidewalk narrowed as the road crossed Arcade Creek, plaintiff was concerned for his safety and decided to use the nearby Union Pacific railroad bridge to cross the creek. He had an unobstructed view of the train tracks, which ran in a straight line. The metal grid area on the side of the bridge is three feet, 10 inches wide. (Copies of photographs are attached to this opinion as an appendix.) Plaintiff walked on the walkway portion of the metal grid area, which is one foot, nine inches wide. Plaintiff understood he did not have Union Pacific's permission to use the bridge and it would be

---

[1] Plaintiff does not contend summary judgment must be limited to grounds stated in the notice of motion.

hazardous to be on the bridge while a train was crossing it. While plaintiff was on the bridge, a Union Pacific freight train approached from the opposite direction at a speed of approximately 50 miles per hour (which was less than the speed limit). The conductor first saw plaintiff when he was about 200 feet away. The engineer sounded the horn. Plaintiff saw the train's lights and heard the horn, but he did not take evasive action. As the train passed, it either struck plaintiff or threw him to the ground. Plaintiff admitted there was nothing Union Pacific's train crew could have done to avoid the accident. Union Pacific has a "zero tolerance" policy towards trespassing on railroad property, responds to reports of trespassing with warnings or arrests when possible, and sponsors community awareness programs about the risks of trespassing on railroad property. Standard chain-link fences are not an effective deterrent against trespassing. A tamper-proof fence would cost about $1 million per mile and could endanger people in the event of a derailment.

Defendant submitted deposition excerpts supporting the foregoing assertions. Of specific interest, plaintiff's deposition testimony showed:

"Q. Certainly you knew that it was a hazard to be on the railroad bridge if there was a train, correct?

"A. Yes. [¶] . . . [¶]

"Q. Did you view walking on the railroad bridge as a safe pathway?

"A. Yes.

"Q. Did you view walking on the railroad bridge a safe pathway if there was a train that would be occupying that bridge at the same time you would be on it?

"A. I wasn't sure if that would be safe or not. I'm used to riding the light rail, and trains pass within that far of me all the time on Light Rail. So I assumed it would be safe, yes."

Plaintiff also testified he did not see the train until it was 20 to 30 feet away. He could not explain why he did not notice the train earlier (other than to speculate the track might dip before it reaches the bridge). He said it "seemed like one second" that the train sounded its horn. When he saw the train "[t]here was nothing I could do. The train was moving at a high rate of speed, so there wasn't time." He did not remember whether he moved to the edge of the bridge. He did not remember if he fell down. He also said he continued to walk upon seeing the train. When asked why he did not hug the railing, he said, "There wasn't time." When asked, "There was time to

continue walking, wasn't there?" he said he did not remember. When asked if he knew what caused him to fall, he said, "No, either the wind blast of the train or being struck by the train." He admitted he was guessing. He did not remember whether he was standing when the train passed him. When plaintiff heard the train whistle, he waved, because when he used to live near railroad tracks the train conductors would beep the whistle and he would wave. When asked whether, in his opinion, there was anything this train crew could have done to avoid the accident, plaintiff said, "No, I don't think there was."

Train conductor Patrick Marino testified in deposition that the walkway consisted of steel plate grating bolted to the bridge structure and was common on railroad bridges. Such walkways are not for pedestrians, but for railroad personnel in case the train breaks down. Marino never observed any warning signs or barricades that would prevent pedestrian use. He had observed nonemployees using similar walkways on other bridges, but not the Arcade Creek bridge. He first saw plaintiff about 15 or 20 feet from the east end of the bridge and about 200 feet from the train. Plaintiff did not react to the horn but just kept walking. When asked if there was anywhere plaintiff could have moved back away from the train to avoid being struck, Marino said, "No," but then said, "He could have laid down," and that was the only thing he could have done to avoid being hit.

Union Pacific agent Blair Geddes testified there are no signs on the bridge, he has responded numerous times to reports of trespassers, and there was another incident in which two males were hit by a train on the same bridge as they ran from a confrontation with other men in the creek area. Defendant's director of police operations, George Slaats, estimated in a declaration that more than 95 percent of the trespassers are old enough to be aware of the risks of walking on or next to railroad tracks.

## THE OPPOSITION TO SUMMARY JUDGMENT

Plaintiff filed an opposition to summary judgment. His response to defendant's separate statement of undisputed facts purported to dispute many of the factual assertions, but did not. For example, in response to the assertion that plaintiff understood it would be hazardous to be on the bridge while a train was crossing it, plaintiff responded, "This is a distorted misstatement of Plaintiff's testimony. Plaintiff testified only that there would be a hazard being on the bridge at the same time as a train."

As to more material disputes, in response to defendant's assertion that the walkway portion of the metal grid area is only one foot, nine inches wide, plaintiff "dispute[d] Defendant's characterization of 'walkway portion.' The

walkway appeared to Plaintiff to be at least 3 feet wide, with bridge supports intruding periodically from the side of the bridge that could easily be stepped around or over."

In response to the assertions that plaintiff knew he did not have permission to be on the railroad bridge, and that Union Pacific maintained a zero tolerance policy against trespassing, plaintiff disputed the assertions, stating he knew he did not have explicit permission because he had not talked with anyone, but there were no "no trespassing" signs or other indicia barring trespassers or warning people not to walk across the bridge.

Plaintiff submitted his own "SUPPLEMENTAL STATEMENT OF UNDIS-PUTED FACTS" (most of which were supported by his own declaration) asserting there were no warning signs or barriers near the bridge. The walkway appeared to be at least three feet wide, with supports from the side of the bridge intruding into the walkway at intervals that could easily be stepped over or around. He believed the walkway was for pedestrian use. He did not know Union Pacific did not intend it to be used by nonemployees and did not know Union Pacific would consider him a trespasser. He believed the walkway was wide enough that he could continue walking as a train passed. He did not know the train would encroach on the walkway. His sole prior experience with trains was with light rail trains. If he had seen a warning sign, he would have heeded it. Union Pacific does post "no trespassing" or warning signs on some, but not all, of its railroad bridges. Plaintiff became aware of the train when he was halfway across the bridge. As the train approached, there was nothing plaintiff could have done except to lie down on the walkway.

## THE REPLY

Defendant filed a reply, arguing among other things that it had no duty to post signs or barriers, and plaintiff did not attest he would have heeded a "no trespassing" sign (as opposed to a sign warning of danger). Defendant asked for judicial notice that light rail trains (like Union Pacific trains) are wider than their tracks.[2]

## THE RULING

The trial court granted the motion and entered summary judgment in defendant's favor. The appellate record (an appellant's appendix pursuant to

---

[2] We see no indication that the trial court granted judicial notice. However, plaintiff has not filed a reply brief on appeal to challenge defendant's reliance on this evidence in its respondent's brief. We shall therefore consider the evidence.

Cal. Rules of Court, rule 5.1) contains only the judgment, not the order granting the motion. The judgment does not set forth the court's reasoning. Defendant did not submit the minute order as a respondent's appendix but instead attached a copy of the minute order[3] to its respondent's brief on appeal, citing California Rules of Court, rule 14(d). However, rule 14(d) merely allows copies of documents *in the appellate record* to be attached to the appellate briefs. The minute order is not part of the appellate record. Nevertheless, plaintiff has not filed a reply brief and has not protested attachment of the minute order. We shall therefore consider it.

Plaintiff appeals from the judgment.

## DISCUSSION

### I. *Causation*

Plaintiff on appeal makes no argument whatsoever on the issue of causation. One of the grounds upon which defendant sought summary judgment was that there was no evidence it caused the injuries. The trial court determined defendant's conduct was not a legal cause of plaintiff's injuries. (Fn. 3, *ante*.) Defendant argues plaintiff has forfeited any challenge to summary judgment based on lack of causation. We agree with defendant.

Thus, an appellant's failure to discuss an issue in its opening brief forfeits the issue on appeal. (*People v. Stanley* (1995) 10 Cal.4th 764, 793 [42 Cal.Rptr.2d 543, 897 P.2d 481]; *Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1345, fn. 6 [100 Cal.Rptr.2d 446]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 [79 Cal.Rptr.2d 273].)

Though summary judgment review is de novo, review is limited to issues adequately raised and supported in the appellant's brief. (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6 [76 Cal.Rptr.2d 457]; see also *Byars v. SCME Mortgage Bankers, Inc.* (2003) 109 Cal.App.4th 1134, 1140 [135 Cal.Rptr.2d 796] [even on review of a summary judgment, the appellant has the burden of showing error]; *Frank and Freedus v. Allstate Ins. Co.* (1996)

---

[3] The minute order stated in part: "The material facts are undisputed. The Court rules that defendant is entitled to judgment as a matter of law. Given the facts of the case, reasonable minds could not differ that defendant railroad was not negligent; it did not have a duty to warn of open and obvious dangers on its property; it acted with reasonable care to prevent injury to trespassers and its conduct was not a legal cause of plaintiff's injuries. Declarations of Slaats, Loza, and Pohle, Jr., including attached exhibits; declaration of [plaintiff]; deposition of [plaintiff], pp. 29, 30, 32, 34–37; Geddes deposition, pp. 24–27; Marino deposition, pp. 22, 33–37. This minute order is effective immediately. No formal order is needed, C.R.C. rule 391, nor is further notice of this ruling required."

45 Cal.App.4th 461, 474 [52 Cal.Rptr.2d 678].) "As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed." (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 116 [113 Cal.Rptr.2d 90].)

■ Causation is an essential element of plaintiff's complaint. (*Nola M. v. University of Southern California* (1993) 16 Cal.App.4th 421, 426–427, 430–431 [20 Cal.Rptr.2d 97].) Causation may be determined as a question of law if reasonable minds would not differ. (*Id.* at p. 428.) If causation is lacking, the complaint cannot stand. (*Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 480–481 [50 Cal.Rptr.2d 785] [affirmed summary judgment where causation was lacking].)

■ Thus, the trial court's ruling of lack of causation disposes of the entire complaint and suffices to affirm summary judgment in favor of defendant. Although we need not go further, we shall briefly address an additional ground for affirmance of the judgment.

## II. *No Duty to Warn*

Plaintiff contends defendant had a duty to warn of dangerous conditions that were not open and obvious. We disagree.

■ As a general rule, an owner or possessor of land owes no duty to warn of obvious dangers on the property. (*Reyes v. Kosha, supra*, 65 Cal.App.4th at p. 461; *Garner v. Pacific Elec. Ry. Co.* (1962) 202 Cal.App.2d 720, 728 [21 Cal.Rptr. 352].)

As noted by defendant, the presence of railroad tracks is a warning of an open and obvious danger. "A railroad track upon which trains are constantly run is itself a warning to any person who has reached years of discretion, and who is possessed of ordinary intelligence, that it is not safe to walk upon it, or near enough to it to be struck by a passing train . . . ." (*Holmes v. South Pac. C. R'y. Co.* (1893) 97 Cal. 161, 167 [31 P. 834]; accord, *Green v. Los Angeles etc. Ry. Co.* (1904) 143 Cal. 31, 36 [76 P. 719] [the railroad track must itself be regarded as a sign of danger].)

Here, plaintiff admitted he knew it would be hazardous to be on the bridge the same time as a train. Plaintiff argues he was aware only of a *general* hazard of being on a railroad bridge near a moving train, but he was unaware of the *specific* hazard that this walkway, narrower than those on other bridges, was so narrow and situated so close to the track that the width of the train

encroached into the walkway to the extent that it was not possible for a person to avoid being struck other than by lying down.

█ Plaintiff's attempt to create a triable issue by dissecting the hazard is unavailing. "It is a matter of common knowledge that it is dangerous to stand close to a fast moving train, both because of overhang and suction." (*Gibson v. Southern Pacific Co.* (1955) 137 Cal.App.2d 337, 353 [290 P.2d 347].) Any reasonable person would know that standing within a few feet of a high speed freight train is dangerous. (*Holmes v. South Pac. C. R'y Co., supra,* 97 Cal. at p. 166 [railroad not liable for death of person who, while waiting for a train, walked up and down three-foot-wide roadway next to tracks at railroad station and stepped partly onto tracks when train sounded whistle].) Moreover, plaintiff admitted familiarity with light rail trains, which (like the train involved in this case) are wider than the tracks upon which they run.

Here, it is undisputed that, at its widest, the metal grid area was only three feet 10 inches wide. Plaintiff admittedly observed the narrowness of the metal grid area. Thus, this case falls within the foregoing authorities. Our conclusion is not undermined by plaintiff's self-serving declaration attempting to minimize his awareness of the risk. Plaintiff declared the metal grid area (which he calls a walkway) "appeared to me to be at least three feet wide. Although supports from the side of the bridge intruded into it periodically across the span, these could easily be stepped around or over. The walkway on the railroad bridge definitely appeared wider than the walkway along the edge of the Roseville Rd[.] bridge and, although I knew that there would be a hazard walking across the railroad bridge, it appeared to me to be the safer route across the creek compared with wading the creek or walking along the edge of the Roseville Rd. bridge."

Although we liberally construe evidence in opposition to summary judgment motions (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143]), it is apparent from plaintiff's declaration that he was counting on the area that was partially blocked by supports to minimize the danger. He thus implicitly acknowledged the danger of being on the unblocked part of the grid—which is where he was when he was injured. The declaration does not create a triable issue of material fact and, contrary to plaintiff's assertion, the question whether the hazard was open and obvious does not present a question of fact for a jury in this case.

We need not address the parties' other arguments, e.g., the duty to remedy or the exercise of reasonable care.

We conclude plaintiff fails to show grounds for reversal of the judgment.

## DISPOSITION

The judgment is affirmed. Respondent shall recover its costs on appeal. (Cal. Rules of Court, rule 27.)

Morrison, J., and Hull, J., concurred.

APPENDIX

APPENDIX

**UNION PACIFIC RAILROAD**

PHOTO SHEET

| FILE NUMBER | SUFFIX |
|---|---|

CLAIMANT

OCCUPATION OR CLASSIFICATION

☐ PI ☐ PI&D ☐ L&DP

ACCIDENT DATE

LOCATION

PHOTOGRAPHED BY

AND TYPE OF CAMERA

AND TYPE OF FILM

TAKEN _____ TIME _____

LOCATION

☐YLIGHT ☐ DARK

☐AR ☐ CLOUDY

NO. _1_

☐INT ☐ NEGATI

HEIGHT _5'_

DISTANCE FROM SUBJECT

DIRECTION FACING RR East

DESCRIPTION

Bridge

NO. _2_

☐INT ☐ NEGATIV

HEIGHT _6'_

DISTANCE FROM SUBJECT

DIRECTION FACING RR East

DESCRIPTION

000004

