Filed 11/24/25  Gonzalez v. City of Palo Alto CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ANNABELLA GONZALEZ,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF PALO ALTO,<br><br>    Defendant and Respondent. | H052614<br>(Santa Clara County<br>Super. Ct. No. 23CV417060) |

Annabella Gonzalez was terminated from her administrative assistant position with the City of Palo Alto in October 2022.  In June 2023, Gonzalez sued the City, alleging causes of action for discrimination, hostile work environment, and failure to prevent harassment, in violation of the Fair Employment and Housing Act (FEHA), Government Code section 12900, et seq.

After Gonzalez failed to oppose multiple demurrers to subsequent amended complaints, the trial court sustained the City's final demurrer without leave to amend.

Gonzalez then filed a motion to set aside that order pursuant to Code of Civil Procedure, section 473, subdivision (b) (hereafter, section 473, subdivision (b)), claiming attorney fault for having failed to calendar and oppose the final demurrer.

The trial court denied the motion on multiple grounds, including that Gonzalez had not alleged compliance with the claim presentation requirement of the Government Claims Act (Claims Act), Government Code sections 905 and 945.5, prior to filing suit;

had failed to oppose multiple demurrers; and had failed to allege sufficient facts to state causes of action.

On appeal, Gonzalez argues that the trial court erred because the Claims Act does not apply to her FEHA causes of action, and that relief under section 473, subdivision (b), was mandatory based on her attorney's affidavit of fault.

We reject the arguments and affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Initial complaint and demurrer*

Gonzalez filed the initial complaint in this action on June 2, 2023, naming the City and unnamed City employees as defendants. The complaint alleged that Gonzalez had been employed as an assistant to the Chief of the Palo Alto Fire Department, and that on April 2, 2019, she wrote a letter of complaint to the City's human resources department that was critical of the interim Fire Chief. As a result of the letter, Gonzalez alleged, she "began to receive a succession of formal work reprimands which were untrue and unhelpful."

According to the complaint, defendants continued to criticize Gonzalez's work performance, albeit without providing any specific criticisms. On August 19, 2021, defendants suspended Gonzalez for three weeks for alleged "unsatisfactory work performance" and for "poor judgment," but without specifying her alleged failings. The complaint alleged that Gonzalez's treatment by defendants "had nothing to do with her job performance but was because of her gender and national origin." On or about October 18, 2022, the City terminated Gonzalez's employment.

Gonzalez then submitted a letter of complaint with the California Civil Rights Department (CRD)—formerly the Department of Fair Employment and Housing—and in turn received a "right to sue letter" from the department on March 10, 2023.

Based on the foregoing, the complaint set forth a cause of action for gender and national origin discrimination in violation of FEHA.

The complaint also set forth a cause of action for hostile work environment, alleging that, for several years before March 10, 2023, City employees had continually harassed Gonzalez because of her gender and national origin for the sole purpose of making her unhappy at work, "in order to force her to quit her employment."

That harassment made working for the City "a severe and unwanted hardship" for Gonzalez, she alleged, and created a work environment that was hostile, intimidating, oppressive and abusive. As a result, Gonzalez alleged, she suffered humiliation, mental and physical distress.

Finally, the complaint set forth a cause of action for failure to prevent harassment, predicated on the allegation that, while the harassment described above was well known to the employees' supervisors and upper management, they did nothing to stop or prevent it, despite their ability to do so, in violation of Government Code section 12940, subdivision (j)(1).

The City demurred to the complaint, arguing Gonzalez had failed to adequately plead that she had exhausted her administrative remedies by filing a verified administrative complaint with the CRD before filing suit, as required by Government Code section 12960—and that she failed to allege facts sufficient to state a cause of action.

### B. First amended complaint and second demurrer

Rather than oppose the demurrer, Gonzalez filed a first amended complaint (FAC) on January 25, 2024.

The FAC set forth the same general factual allegations as the initial complaint and included as exhibits a copy of a complaint letter Gonzalez had filed with the CRD, and the right-to-sue letter she received in response.

The City demurred to the FAC on February 27, 2024, on the grounds Gonzalez had failed to plead that she filed a timely pre-litigation claim as required by the Claims Act, and that the FAC did not state facts sufficient to constitute a cause of action.

3

Gonzalez again did not oppose the demurrer to the FAC, or contest the trial court's ruling in the City's favor.[1]  Accordingly, the trial court sustained the demurrer.  It stated that, "[w]hile it appears to the Court that any amendment may be futile at least for failure to comply with the Government Claims Act," the court nevertheless granted Gonzalez 20 days leave to amend.

### C.  Second amended complaint and third demurrer

Gonzalez then filed a second amended complaint (SAC) on April 9, 2024.  The SAC set forth two causes of action pursuant to FEHA—gender and national origin discrimination, and failure to prevent harassment—and alleged that the Claims Act does not apply to Gonzalez's FEHA causes of action.

In support of the gender and national origin discrimination cause of action, the SAC alleged that during the entire time of her employment, Gonzalez "was the subject of snide and disrespectful remarks by other Fire Department employees because she was a female and because of her Latina national origin."  Gonzalez wrote a letter of complaint to the City's human resources department on April 2, 2019, which was critical of the Fire Chief "for not doing anything to cease said hateful criticisms by his employees of [Gonzalez's] gender and national origin."

As a result of the letter, Gonzalez alleged, she began to receive "an unjustified succession of formal work reprimands which were untrue," and which "continued unabated for over two years onto [her] performance reviews, culminating in her suspension on August 19, 2021," and her subsequent termination on October 18, 2022.  Gonzalez alleged she had been "performing competently," and the reason for her termination was unlawful discrimination based on her gender and national origin.

---

[1] Gonzalez did file a purported opposition to a demurrer on February 28, 2024—the day after the City's demurrer to the FAC was filed—but the opposition was directed at the City's first demurrer to the initial complaint, which had been rendered moot by Gonzalez's filing of the FAC.

Gonzalez then filed a complaint of unlawful discrimination with the CRD and received a "right to sue letter" from the department on March 10, 2023.

In support of the cause of action for failure to prevent harassment, the SAC alleged that the "constant and unceasing criticisms" based on Gonzalez's gender and national origin were so severe and pervasive that they altered the conditions of her employment. Further, it alleged that a reasonable person in Gonzalez's circumstances "would have considered the work environment poisoned by such harassment to be hostile, intimidating, offensive, oppressive and abusive because of the insulting remarks by other employees of said Fire Department disparaging Plaintiff's gender, saying [that] only a male should have been employed to carry on the duties of her job and that Latinas are physically and mentally incapable of performing the duties of Plaintiff's job." It also alleged that Gonzalez's managers and supervisors knew about the harassing conduct but did nothing to prevent or restrain it.

The City demurred to the SAC as well. It first argued that both causes of action were barred because Gonzalez had failed to plead that she submitted a timely pre-litigation claim for money or damages under the Claims Act. According to the City, the complaint letter that Gonzalez submitted to the CRD prior to filing suit cannot satisfy the claim presentation requirement of the Claims Act because both causes of action in the SAC relied on factual allegations which she had not included in the letter. Therefore, "Gonzalez did not give City sufficient notice of the nature of her claims or an opportunity to investigate her claims prior to filing her Complaint in state court." It would also be futile to grant leave to amend, the City argued, because Gonzalez could not cure the defect, as the statutory time to submit the claim presentation had already expired.

Second, the City argued that both causes of action were barred for the failure to exhaust administrative remedies, as Gonzalez's complaint letter to the CRD had not specified the injurious actions alleged in the SAC.

5

Finally, the City argued that the SAC failed to allege facts establishing the mandatory elements to state a prima facie claim for either cause of action. The gender and national origin discrimination cause of action did not allege that Gonzalez performed her job competently or that she was subjected to an adverse employment action motivated by her gender or national origin. And the failure to prevent harassment cause of action failed to allege that any harassment she endured was severe or pervasive enough to alter the conditions of employment.

Gonzalez did not oppose the demurrer to the SAC or contest the tentative ruling in the City's favor. On August 6, 2024, the trial court sustained the demurrer on multiple grounds. First, it relied on the maxim that the failure to file an opposition "creates an inference that the motion or demurrer is meritorious," citing *Sexton v. Super Court* (1997) 58 Cal.App.4th 1403, 1410.

Second, the court sustained the demurrer on the merits as well, finding that the SAC alleged insufficient facts to support the causes of action. It stated that Gonzalez had "agreed to amend her complaint to allege additional facts but never followed through on that agreement. It is Plaintiff's burden to show in what manner the complaint can be amended to overcome demurrer. [Citation] Having failed to respond to this motion, Plaintiff has not made this showing." The court thus sustained the demurrer without leave to amend.

Judgment was entered on August 20, 2024, notice of entry of which was filed and served the same day.

### D. Section 473, subdivision (b), motion

Later on August 20, 2024—after the judgment had been entered—Gonzalez filed a "motion for reconsideration and setting aside of court orders sustaining demurrer without leave to amend and dismissing action," pursuant to section 473, subdivision (b).

In support of the motion, Gonzalez submitted a declaration from her attorney in which he "acknowledge[d] fault" for "failing to calendar" the City's demurrer to the

6

SAC. Counsel attested that the failure to calendar the demurrer caused him "to miss the opportunity to file opposition to said demurrer and to observe the court's tentative ruling…." Counsel also attached a proposed third amended complaint as an exhibit to his declaration.

Based on her attorney's declaration of fault, Gonzalez argued that relief was mandatory pursuant to section 473, subdivision (b), the purpose of which is to "relieve the innocent client of the burden of the attorney's fault," even where the attorney's neglect was inexcusable.

The City opposed the motion, arguing first that counsel's declaration of fault was not credible. According to the City, its attorney had "personally reminded [Gonzalez's attorney] of the hearing date on the City's demurrer *twice* in the weeks leading up to the demurrer hearing, including over a telephonic meet and confer *just one week* before Plaintiff's opposition to the demurrer was due." (Original italics and bold.) The City contended it was implausible that counsel "not only forgot to calendar the demurrer when it was originally filed in June 2024, but also disregarded City's counsel's later written and verbal reminders of the demurrer hearing date, then forgot to file an opposition by the deadline or at any time prior to the hearing on the demurrer, and finally, after another two weeks had passed, forgot to check the Court's tentative ruling or appear for the hearing on the demurrer. Put differently, [counsel's] declaration of fault expects the Court to believe that, even though he discussed the impending demurrer hearing with City's counsel on July 17, it did not occur to him to check his calendar or the Court's docket for any deadlines associated with the demurrer at *any time* prior to August 20, the day he was served with the judgment of dismissal." (Original italics and bold.)

The City also argued that Gonzalez's motion did not comport with the requirements of section 473, subdivision (b). Specifically, the City contended that while section 473, subdivision (b), requires a party to include with the motion "a copy of the answer or other pleading proposed to be filed therein," Gonzalez provided only a

7

proposed third amended complaint—rather than a proposed opposition to the demurrer to the SAC—for which leave of court would have been required anyway.

Finally, the City argued that, while Gonzalez's motion was entirely predicated on her attorney's alleged calendaring error, the trial court's order sustaining the demurrer had been based on the merits as well. In other words, the City argued that even if the alleged calendaring error were true, Gonzalez had made no showing that the error caused the trial court to sustain the demurrer.

### E. Hearing and order

The trial court held a hearing on Gonzalez's motion on September 19, 2024. Counsel for Gonzalez reiterated that he was at fault for having failed to file an opposition to the demurrer to the SAC. He also argued that Gonzalez had complied with the Claims Act. When queried by the trial court as to what specifically Gonzalez had done to comply—because none of the complaints had included any such allegations—counsel explained that Gonzalez had sent a letter to the City before filing suit and that he had been "in touch with one of the attorneys well beforehand."

The trial court responded: "Making phone calls to counsel before you file a lawsuit is not complying with the Government Claims Act. And I am pretty sure you know that, which is why it hasn't been alleged." After counsel stated that "it wasn't just phone calls," and that Gonzalez had sent a notice complying with the Claims Act, the court asked: "On what date? Where's the writing?"

Counsel responded that he did not have that in front of him, but offered to look briefly. The court stated: "No, you may not. You should have come prepared to—if you really and truly did send the notices required under the Government Claims Act—this was clearly the last opportunity you would ever have had to show me that…. [¶] So I don't see any basis to set aside the judgment in this case."

The trial court entered its order denying Gonzalez's motion on September 23, 2024. It noted that "this is not the first time in this case Plaintiff failed to comply with

8

the Code of Civil Procedure," and "this is the second time Plaintiff failed to timely respond to a demurrer." "Counsel cannot be permitted," the court stated, "to use Code of Civil Procedure section 473, subdivision (b) as an end run around a legitimately issued adverse judgment."

The order emphasized, however, that Gonzalez's failure to oppose the demurrer to the SAC "was not the sole basis for the Court's sustaining it without leave to amend." Instead, the order sustaining the demurrer had also been based on Gonzalez's failure to comply with the Claims Act.

Finally, the court addressed its colloquy with Gonzalez's counsel at the hearing, reciting that it had denied counsel's request for more time to produce a letter sent to the City prior to filing suit—the existence of which had not been alleged in any of the complaints, but which would purportedly demonstrate compliance with the Claims Act. The court explained that it had denied the request because: "(a) having twice failed to timely respond to a demurrer this was Plaintiff's chance to come forward with all necessary information, and (b) there is no evidence of any writing except the CRD complaint, which the Court has already found insufficient to comply. Palo Alto was also at the hearing and insisted it had never received any communication other than the CRD letter."

Notice of entry of the order was filed and served on September 23, 2024.

Gonzalez filed a notice of appeal on October 10, 2024.[2]

---

[2]As discussed further below, Gonzalez's notice of appeal identified only the order denying her section 473, subdivision (b), motion as the order or judgment being appealed—that is, she did not identify or purport to appeal the underlying judgment or order sustaining the demurrer to the SAC.

Nor did Gonzalez file a separate notice of appeal of the trial court's subsequent December 5, 2024, order awarding attorney fees and costs to the City pursuant to Government Code section 12965, subdivision (c)(6).

## II. DISCUSSION

Gonzalez presents three arguments on appeal. First, she argues that the City's demurrers should have been overruled because FEHA actions for employment discrimination are not subject to the claim presentation requirements of the Claims Act.

Second, she argues that the trial court had no discretion to deny her section 473, subdivision (b), motion because relief is mandatory when an attorney submits an affidavit of fault, as hers did.

Finally, she argues the City should not have been awarded its attorney fees and costs because Government Code section 12965, subdivision (c)(6), does not apply where a plaintiff has a colorable FEHA claim.

We address these in turn below.

### A. Orders sustaining demurrers

As a threshold matter, the City argues that Gonzalez did not properly appeal the trial court's order sustaining the demurrer to the SAC because her civil case information sheet only identified and attached the order denying her section 473, subdivision (b), motion, but not the underlying judgment of dismissal or the order sustaining the demurrer to the SAC. Indeed, neither the notice of appeal nor the civil case information sheet identified the order sustaining the demurrer or the subsequent judgment of dismissal.

California Rules of Court, rule 8.100(a)(2), provides that a notice of appeal "is sufficient if it identifies the particular judgment or order being appealed." This has been construed in some instances to preclude an appeal of an appealable order that was not specified in the notice of appeal. (See, e.g., *Filbin v. Fitzgerald* (2012) 211 Cal.App.4th 154, 173 [where several judgments and orders occurring close in time are separately appealable, each must be expressly specified to be reviewable on appeal].)

At the same time, the Rules of Court establish a policy of liberally construing a notice of appeal in favor of its sufficiency. (Cal. Rules of Court, rule 8.100(a)(2) ["The notice of appeal must be liberally construed."]; *Verceles v. Los Angeles Unified School*

10

*District* (2021) 63 Cal.App.5th 776, 783 [" '[N]otices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced.' "].)

However, "there are limits to our ability to liberally construe a notice of appeal. 'The policy of liberally construing a notice of appeal in favor of its sufficiency [citation] does not apply if the notice is so specific it cannot be read as reaching a judgment or order not mentioned at all.' " (*In re J.F.* (2019) 39 Cal.App.5th 70, 76; *Baker v. Castaldi* (2015) 235 Cal.App.4th 218, 225 ["[I]t is well 'beyond liberal construction' to view an appeal from one order as an appeal from a 'further and different order.' [Citation.] 'Despite the rule favoring liberal interpretation of notices of appeal, a notice of appeal will not be considered adequate if it completely omits any reference to the judgment being appealed.' "].)

We need not determine here whether Gonzalez's notice of appeal should be construed to extend to the trial court's order sustaining the demurrer to the SAC because, in any event, her challenge fails.

Although a court of appeal reviews a ruling sustaining a demurrer de novo, that standard does not relieve the plaintiff of her burden on appeal. (*Kahan v. City of Richmond* (2019) 35 Cal.App.5th 721, 730.) A plaintiff " 'bears the burden of demonstrating that the trial court erroneously sustained the demurrer as a matter of law' and 'must show the complaint alleges facts sufficient to establish every element of [the] cause of action.' " (*Sui v. Price* (2011) 196 Cal.App.4th 933, 938, quoting *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43.)

Thus, even where de novo review applies, the reviewing court is not obligated "to cull the record for the benefit of the appellant." (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 455 [review is limited to issues which have been adequately raised and briefed]; see also *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 [issues do not

have a life of their own, and may be treated as forfeited if they are not raised or developed with legal argument]; *Christoff v. Union Pacific Railroad Company* (2005) 134 Cal.App.4th 118, 125 (*Christoff*) ["[A]n appellant's failure to discuss an issue in its opening brief forfeits the issue on appeal" even where review is de novo].)

Here, Gonzalez argues only that FEHA actions for employment discrimination are not subject to the claim presentation requirements of the Claims Act. However, as summarized above, the trial court's order sustaining the demurrer to the SAC was not based solely on its conclusion that the SAC failed to allege compliance with the Claims Act. Instead, it began by noting that Gonzalez had failed to oppose the demurrer, and it cited the maxim that such a failure "creates an inference that the motion or demurrer is meritorious."

It also found that the demurrer was "well[-]taken," because the SAC alleged insufficient facts to support the causes of action. As set forth above, the City's demurrer had argued that the SAC failed to allege facts establishing the mandatory elements to state a prima facie claim for either cause of action. The trial court noted that Gonzalez had "agreed to amend her complaint to allege additional facts but never followed through on that agreement."

Thus, we need not address Gonzalez's arguments regarding application of the Claims Act to FEHA causes of action because, even if she were correct, she has failed to challenge the other bases of the trial court's order. We consider those challenges forfeited. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784–785 (*Badie*) [when appellant fails to raise a point, reviewing court may treat it as forfeited]; *Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 230 [review limited to issues adequately raised and briefed]; *Christoff, supra,* 134 Cal.App.4th at p. 125.)

We must also presume the trial court's order was correct on those bases. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609 ["it is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and

the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment"].)

We therefore presume the trial court's order sustaining the demurrer to the SAC was correct on the grounds that Gonzalez has failed to challenge.

### B. Order denying section 473, subdivision (b), motion

Section 473, subdivision (b), includes two distinct provisions for relief from default—one discretionary, and one mandatory. (*Martin Potts & Associates, Inc. v. Corsair, LLC* (2016) 244 Cal.App.4th 432, 438 (*Martin Potts*), quoting *Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 838.) Where an attorney files an affidavit of fault, relief is mandatory, even if the attorney's neglect was inexcusable. (*Rodrigues v. Superior Court* (2005) 127 Cal.App.4th 1027, 1032–1033.)

The relevant portion of section 473, subdivision (b), which establishes the mandatory relief provision states: "Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to [his or her] mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against [his or her] client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against [his or her] client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (Code Civ. Proc., § 473, subd. (b).)

The mandatory relief provision "has three purposes: (1) 'to relieve the innocent client of the consequences of the attorney's fault'; (2) 'to place the burden on counsel'; and (3) 'to discourage additional litigation in the form of malpractice actions by the

13

defaulted client against the errant attorney.' " (*Martin Potts, supra*, 244 Cal.App.4th at p. 439, citations omitted.) "These purposes are advanced as long as mandatory relief is confined to situations in which the attorney, rather than the client, is the cause of the default, default judgment, or dismissal." (*Ibid*.)

Where application of the mandatory relief provision presents a pure question of law, it is subject to de novo review; where the facts are in dispute as to whether the prerequisites have been met, the trial court's findings are reviewed for substantial evidence. (*Talbott v. Ghadimi* (2025) 109 Cal.App.5th 967, 977, quoting *Carmel, Ltd. v. Tavoussi* (2009) 175 Cal.App.4th 393, 399.)

Gonzalez argues that relief was mandatory here pursuant to section 473, subdivision (b), because her attorney submitted an affidavit of fault, so the trial court lacked the discretion to deny the motion.

However, Gonzalez again fails to recognize the breadth of the trial court's order sustaining the demurrer to the SAC, which was not predicated solely on her failure to have opposed the demurrer, but also included a determination that the demurrer was "well[-]taken" because the SAC alleged insufficient facts to support the causes of action.

In other words, the trial court found, consistent with the statutory language in section 473, subdivision (b), that the dismissal was not in fact caused solely "by the attorney's mistake, inadvertence, surprise, or neglect"—rather, it was caused in part by the fact that the SAC failed to allege facts establishing the elements to state a prima facie claim for its causes of action. Gonzalez did not claim in her motion that such failure was a product of attorney fault—nor did her attorney's affidavit. (See, e.g., *Cisneros v. Vueve* (1995) 37 Cal.App.4th 906, 912 [the "unless" clause in section 473, subdivision (b) is a "causation testing device"].)

Gonzalez has not challenged the trial court's causation finding on appeal or otherwise argued that the trial court abused its discretion by denying the motion. We consider the arguments forfeited. (*Badie, supra*, 67 Cal.App.4th at pp. 784–785.)

14

A trial court is also empowered to make a threshold credibility determination regarding an attorney's affidavit of fault in the context of deciding a section 473, subdivision (b), motion. (*Behm v. Clear View Technologies* (2015) 241 Cal.App.4th 1, 15 (*Behm*) ["[t]he statute clearly involves an assessment of credibility by the trial court."]; citing *Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613, 622; *Cowan v. Krayzman* (2011) 196 Cal.App.4th 907, 915.) A reviewing court must also defer to the trial court's determination of credibility and not reweigh evidence or reassess the credibility of witnesses. (*Behm, supra*, at p. 15 ["If the evidence gives rise to reasonable conflicting inferences, one of which supports the trial court's determination, we will affirm the court's finding on appeal."].)

We construe the trial court's order denying Gonzalez's section 473, subdivision (b), motion as having made a credibility determination regarding counsel's affidavit of fault. As summarized above, the order stated that "this is not the first time in this case Plaintiff failed to comply with the Code of Civil Procedure," and "[c]ounsel cannot be permitted to use Code of Civil Procedure section 473, subdivision (b) as an end run around legitimately issued adverse judgment."

That ruling followed the City's argument in opposition to the section 473, subdivision (b), motion, in which it stated that its attorney "personally reminded [Gonzalez's attorney] of the hearing date on the City's demurrer ***twice*** in the weeks leading up to the demurrer hearing, including over a telephonic meet and confer ***just one week*** before Plaintiff's opposition to the demurrer was due." (Original italics and bold.) The trial court appeared to discount Gonzalez's attorney's affidavit of fault as lacking credibility, a determination which Gonzalez has not challenged on appeal. (*Behm, supra*, 241 Cal.App.4th at p. 15 [trial court discounted affidavit of fault].)

### C. *Order awarding attorney fees*

On December 6, 2024, the trial court awarded the City $38,621 in attorney fees and $3,177.62 in costs.

15

Gonzalez argues that the award was improper pursuant to Government Code section 12965(c)(6)—which allows a court to award fees and costs to a prevailing defendant in a FEHA action only where the court finds the action was "frivolous, unreasonable, or groundless when brought, or the plaintiff continued to litigate after it clearly became so"—because the statute does not apply where a plaintiff had a colorable FEHA claim, even if the claim is ultimately unsuccessful.

However, Gonzalez did not separately appeal the post-judgment order awarding the City its attorney fees and costs—accordingly, this court lacks jurisdiction to review that order. (*Colony Hill v. Ghamaty* (2006) 143 Cal.App.4th 1156, 1171 ["An appellate court has no jurisdiction to review an award of attorney fees made after entry of the judgment, unless the order is separately appealed."].)

### III. DISPOSITION

The order denying the section 473, subdivision (b), motion, and the underlying judgment of dismissal and order sustaining the demurrer to the SAC are affirmed. In the interests of justice, the parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

_____
Wilson, J.

WE CONCUR:


_____
Grover, Acting P. J.




_____
Lie, J.




*Gonzalez v. City of Palo Alto*
H052614