Filed 10/6/14  In re A.R. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.R., a Person Coming Under the Juvenile Court Law. | B254704 (Los Angeles County Super. Ct. No. DK03302) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RAMIRO R.,<br><br>    Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Margaret S. Henry, Judge.  Affirmed.

Daniel G. Rooney, under appointment by the Court of Appeal for Defendant and Appellant.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel and Jeanette Cauble, Deputy County Counsel for Plaintiff and Respondent.

No appearance for Minor.

\* \* \* \* \* \* \*

Appellant Ramiro R. (Father) appeals from a jurisdiction order sustaining a dependency petition pursuant to Welfare and Institutions Code section 300, subdivision (b),[1] which alleged that his drug abuse endangered the physical safety of his infant daughter, A.R., and placed her at risk. We affirm. Though we need not reach the merits of Father's claims because Mother has not appealed from the jurisdictional findings as to her, we conclude substantial evidence supported the juvenile court's jurisdiction order.

## FACTUAL AND PROCEDURAL BACKGROUND

A.R. came to the attention of the County of Los Angeles Department of Children and Family Services (Department) in January 2014, two days after she was born, when a referral reported that she and Mother tested positive for heroin. In an interview with the Department, Mother reported she had been using heroin for the past three years on a daily basis. In addition to A.R., Mother had two adult children and two teenagers; the latter resided with her mother pursuant to a legal guardianship. Mother reported that she and Father had known each other since they were young and started seeing each other last year. She said he broke up with her when he learned about her drug use. She denied that Father used drugs. After the breakup, Mother learned she was pregnant. She reported attempting to obtain medical care at a clinic, but was referred to Olive View Hospital. She was afraid to go because her friends told her the hospital would take her baby away. Mother received no prenatal care.

When Mother finally went to the hospital approximately five days before A.R.'s birth, she was diagnosed with high blood pressure and Hepatitis C, and was admitted to the hospital. Mother received daily methadone once admitted, and A.R. was born prematurely with respiratory issues and withdrawal symptoms. A.R. also received methadone daily and was expected to remain in the hospital for at least two months. Mother consented to A.R.'s detention and requested that she be placed with Father or her adult daughter.

---

[1] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

The Department also interviewed Father, who reported he was married with three children but separated from his wife as a result of his involvement with Mother. He stated he was initially unaware of Mother's drug use and broke up with her when he discovered it. After she told him she was pregnant, he tried to get her into a methadone clinic but she did not follow through. During a team decision meeting (TDM) one week later, Father disclosed that he drinks alcohol and uses cocaine occasionally. He admitted that he might have used some type of drug one week earlier. He agreed to drug test and could not represent that the test would be negative. He characterized himself as a recreational drug user—not a drug addict—and did not believe his drug use would hinder his ability to care for A.R. He was currently working and lived alone. By the end of the TDM, Father conceded he was unable to care for a newborn and consented to A.R.'s placement with R.H., her adult sibling.

On January 31, 2014, the Department filed a dependency petition alleging under section 300, subdivision (b) that A.R. was born with a positive toxicology screen for morphine and opiate withdrawal and that such a condition would not exist without unreasonable acts by Mother (paragraph b-1); that Mother had a history of substance abuse and was a current heroin abuser, and such abuse placed A.R. at risk (paragraph b-2); and Father was a current abuser of illicit drugs, including cocaine, which endangered A.R.'s physical health and safety and rendered Father unable to provide regular care for her (paragraph b-3). At the detention hearing, the juvenile court deemed Father to be A.R.'s presumed father and found a prima facie case for detaining her.

In its February 2014 jurisdiction/disposition report, the Department reported A.R. remained hospitalized and was continuing to exhibit withdrawal symptoms. In a telephonic interview with the Department, Father denied the petition's allegations, stating that Mother had not used and was not using drugs, and that he was not using drugs. He attributed a recent positive drug test for opiates to an unspecified medication. He stated he had visited A.R. and sought custody of her. The Department was unable to contact Mother for an additional interview. On the basis of Mother's and Father's unresolved

substance abuse problems, the Department recommended that A.R. remain suitably placed and that Mother and Father receive reunification services.

Mother and Father both appeared at the February 21, 2014 jurisdiction/disposition hearing. Mother submitted on paragraph b-2 of the petition in exchange for the Department's agreement to dismiss paragraph b-1. Father did not testify. His counsel argued he was enrolled in a drug program and the Department had failed to set him up for further drug testing. The Department represented that Father had been set up for random drug testing but had failed to call in for the tests. After admitting the Department's prior reports into evidence and hearing counsel's arguments, the juvenile court found paragraphs b-2 and b-3 true as pled and that A.R. was a person as described in section 300, subdivision (b). The juvenile court noted that the evidence showed Father had "every bit as much the drug problem as [Mother]."

Proceeding immediately to disposition, the juvenile court declared A.R. a dependent of the court, ordered her removed from her parents' custody and placed her under Department supervision. Consistent with Father's request that A.R. be placed with her adult sibling R.H., the juvenile court gave the Department discretion to place A.R. with any appropriate relative. Both Mother and Father received reunification services and monitored visitation. Father was ordered to participate in a drug and alcohol program with aftercare and random or on-demand testing, parenting classes and individual counseling.

Father timely appealed.

## DISCUSSION

Father maintains substantial evidence did not support the juvenile court's jurisdiction finding pursuant to paragraph b-3, arguing the Department failed to establish

4

his drug use warranted the juvenile court's assumption of jurisdiction over A.R.[2] We need not reach Father's contention given the absence of any challenge to the jurisdictional findings involving Mother. Nonetheless, substantial evidence supported jurisdiction under paragraph b-3.

## I. Mother's Conduct Was Sufficient to Bring A.R. within the Jurisdiction of the Dependency Court.

Mother pled no contest to the petition's allegations that she had a history of substance abuse, she used heroin during her pregnancy with A.R. and her conduct endangered A.R.'s physical health and placed her at risk of harm. "A plea of 'no contest' to allegations under section 300 at a jurisdiction hearing admits all matters essential to the court's jurisdiction over the minor." (*In re Troy Z.* (1992) 3 Cal.4th 1170, 1181.) Mother has not appealed from the juvenile court's jurisdiction order and it is therefore final as to her. (See Code Civ. Proc., § 906; *Wanda B. v. Superior Court* (1996) 41 Cal.App.4th 1391, 1395.)

As explained in *In re I.A.* (2011) 201 Cal.App.4th 1484, 1491, because dependency law is focused on protecting the child, "it is necessary only for the court to find that one parent's conduct has created circumstances triggering section 300 for the court to assert jurisdiction over the child. [Citations.]" The *In re I.A.* court continued: "For jurisdictional purposes, it is irrelevant which parent created those circumstances. A jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established. [Citation.] As a result, it is commonly said that a jurisdictional finding involving one parent is '"good against both. More accurately, the minor is a dependent if the actions of either parent bring [her] within one of the statutory definitions of a

---

[2] Though Father also appealed from the disposition order, his arguments on appeal are confined to jurisdiction. He has therefore forfeited any challenge to the disposition order. (See, e.g., *Antounian v. Louis Vuitton Malletier* (2010) 189 Cal.App.4th 438, 455 ["an argument not raised in the opening brief is forfeited on appeal"]; *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125 ["an appellant's failure to discuss an issue in its opening brief forfeits the issue on appeal"].)

dependent."' [Citation.] For this reason, an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence." (*Id.* at p. 1492; accord, *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) Accordingly, the juvenile court's jurisdictional finding sustaining paragraph b-2 is sufficient, alone, to bring A.R. within the juvenile court's jurisdiction.

## II. Substantial Evidence Supported the Dependency Petition's Allegations Involving Father.

Though we could affirm the jurisdiction order solely for the reasons outlined above, we will address Father's contentions for his benefit. (*In re Alexis E., supra,* 171 Cal.App.4th at p. 451.) As sustained by the juvenile court, paragraph b-3 of the section 300 petition alleged that Father "is a current abuser of illicit drugs, including cocaine, which renders the father unable to provide regular care of the child. The father's abuse of illicit drugs endangers the child's physical health and safety, and places the child at risk of physical harm, damage and danger." In sustaining the allegation, the juvenile court commented that the evidence showed Father had "every bit as much the drug problem as" Mother.

We review the juvenile court's jurisdictional findings for substantial evidence. (*In re E.B.* (2010) 184 Cal.App.4th 568, 574.) Pursuant to this standard of review, we determine whether there is any substantial evidence, contradicted or uncontradicted, to support the juvenile court's determination. (*In re Tracy Z.* (1987) 195 Cal.App.3d 107, 113.) "[W]e draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) "'[W]e must accept the evidence most favorable to the order as true and discard the unfavorable evidence as not having sufficient verity to be accepted by the trier of fact.' [Citation.]" (*In re A.S.* (2011) 202 Cal.App.4th 237, 244.) Father bears the burden of showing there is no

6

evidence of a sufficiently substantial nature to support the order. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

Jurisdiction is appropriate under section 300, subdivision (b) where there is substantial evidence "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse." The juvenile court need not wait until the child is actually harmed to assume jurisdiction and take steps to protect the child, and it may consider past events to determine whether the child presently needs the court's protection. (*In re N.M.* (2011) 197 Cal.App.4th 159, 165.)

Here, substantial evidence supported jurisdiction under paragraph b-3. The juvenile court's primary concern was A.R.'s best interests and the provision of a safe home free from the negative effects of substance abuse. (§ 300.2; *In re B.T.* (2011) 193 Cal.App.4th 685, 692.) The evidence showed that Father admitted to using cocaine, he admitted to using drugs at about the time of A.R.'s birth and he had a recent positive drug test for opiates which he ingested some time after he had the opportunity to observe the effects of drug use on his newborn daughter. There was no evidence that he had undertaken any steps to ameliorate or resolve his drug use, and it was therefore reasonable for the juvenile court to infer Father continued to use drugs at the time of the jurisdiction hearing.[3] As explained in *In re S.O.* (2002) 103 Cal.App.4th 453, 461, a parent's "'[p]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue." Moreover, Father later recanted his earlier admissions and denied that he or Mother ever used illicit drugs, which supported the

---

[3]    Though counsel stated that Father had enrolled in a drug treatment program, Father offered no evidence of any enrollment or participation in such a program. (See *In re Zeth S.* (2003) 31 Cal.4th 396, 413-414, fn. 11 ["It is axiomatic that the unsworn statements of counsel are not evidence"].)

further reasonable inference that Father did not intend to discontinue his drug use. (See *In re Esmeralda B.* (1992) 11 Cal.App.4th 1036, 1044 [a parent's denial is a relevant factor in determining whether the parent is likely to modify his behavior].) Accordingly, substantial evidence showed that Father's unresolved drug use constituted a substantial danger to A.R.'s protection.

We find no merit to Father's efforts to demonstrate the evidence was insufficient to show his drug use placed A.R. at risk. He first argues the evidence established only that he had used drugs—not that he was a substance *abuser* within the meaning of section 300, subdivision (b). He relies on *In re Drake M.* (2012) 211 Cal.App.4th 754, 764, where the court acknowledged it had "previously stated that without more, the mere usage of drugs by a parent is not a sufficient basis on which dependency jurisdiction can be found." In an effort to create a workable definition of the term "substance abuse" to avoid inconsistencies in the application of section 300, subdivision (b), the *In re Drake M.* court determined "that a finding of substance abuse for purposes of section 300, subdivision (b), must be based on evidence sufficient to (1) show that the parent or guardian at issue had been diagnosed as having a current substance abuse problem by a medical professional; or (2) establish that the parent or guardian at issue has a current substance abuse problem as defined in the DSM–IV–TR [American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th rev. ed. 2000)]." (*In re Drake, M., supra*, at p. 766.) Father argues the evidence offered here failed to satisfy either standard.

Recently, however, the court in *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1218, concluded that while the substance abuse definition proposed in *In re Drake M.* was useful and workable for the purpose of dependency jurisdiction, "it is not a comprehensive, exclusive definition mandated by either the Legislature or the Supreme Court, and we are unwilling to accept [the mother's] argument that only someone who has been diagnosed by a medical professional or who falls within one of the specific DSM–IV–TR categories can be found to be a current substance abuser." The court added that the DSM-IV-TR definition had since been replaced "by a more broadly defined

8

classification of 'substance use disorders' in the DSM-5." (*In re Christopher R., supra*, 225 Cal.App.4th at p. 1218, fn. 6.) Consequently, the court determined that regardless of the lack of a professional diagnosis and without regard to the DSM-IV-TR categories, evidence that the mother ingested drugs during the final stages of pregnancy, admitted to past drug use, and failed to drug test or enroll in a drug treatment program supported the exercise of jurisdiction under section 300, subdivision (b). (*In re Christopher R., supra*, at p. 1218.) The same court further affirmed the jurisdictional finding as to the father on the basis that his "persistent and illegal use of marijuana demonstrated an inability to provide regular care for infant Brianna." (*Id.* at p. 1220.) Here, evidence of Father's unresolved, repeated and illegal drug use was no different, and likewise supported the juvenile court's exercise of jurisdiction.

We likewise reject Father's contention that there was insufficient evidence of any connection between his drug use and a risk to A.R.'s physical safety. A.R. was only one month old at the time of the jurisdiction hearing. Courts afford special protection to "children of such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 824.) While an older child may be able to avoid physical danger and seek care from responsible adults if neglected by a parent, infancy is "an inherently hazardous period of life" with special vulnerability. (*Id.* at p. 825; accord, *In re Drake M., supra*, 211 Cal.App.4th at p. 767; *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1004.) For this reason, in cases involving infants, "the finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm." (*In re Drake M., supra*, at p. 767.)

Finally, we find no merit to Father's contention that there was insufficient evidence showing his drug use posed a future risk of harm to A.R. Again, the evidence showed that Father used both cocaine and opiates, lied about his drug use and took no steps designed to help him stop using drugs. He also lied about Mother's drug use—first stating he broke up with her when he discovered her drug use but later denying she ever used drugs, despite A.R.'s being born suffering withdrawal symptoms. Indeed, the

9

evidence showed that Father tested positive for opiates while A.R. remained hospitalized, receiving methadone every six hours to control her withdrawal. These circumstances are unlike those in the cases relied on by Father. (See *In re Destiny S., supra*, 210 Cal.App.4th at p. 1004 [no substantial risk of future harm where evidence showed 11-year-old had smelled the mother's marijuana smoke but there was no evidence drug use caused neglect or other detriment, and the mother had tested clean for three months]; *In re David M.* (2005) 134 Cal.App.4th 822, 829-830 [insufficient evidence of future risk of harm from the mother's prior drug use where she had tested clean 18 times and there was no evidence her prior drug abuse had negatively affected the child]; *Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322, 1343, 1346 [the mother's nine missed drug tests and single positive test for marijuana failed to show a substantial risk of harm, given her 84 drug-free tests, her participation in a drug treatment program and the lack of other evidence showing she had a drug problem].) Nor do we see any meaningful distinction between this case and *In re Alexis E., supra*, 171 Cal.App.4th at pages 451 to 452, where the court observed that the father's non-prescription marijuana use in front of his children posed a risk of harm. We decline to draw any favorable inference from the fact Father had not used drugs in A.R.'s presence, as he had no opportunity to do so because she remained hospitalized. Substantial evidence showed that A.R. remained at future risk from Father's drug use.

## DISPOSITION

The jurisdiction order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


FERNS, J.*

We concur:

ASHMANN-GERST, Acting P.J.          CHAVEZ, J.

_____

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.