Filed 10/31/14  Wycoff v. Paradise Unified  School Dist. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

| | |
|---|---|
| SALLY WYCOFF, | C071754 |
| Plaintiff and Appellant, | (Super. Ct. No. 151201) |
| v. | |
| PARADISE UNIFIED SCHOOL DISTRICT, | |
| Defendant and Respondent. | |

Plaintiff Sally Wycoff appeals from a judgment in favor of defendant Paradise Unified School District (District) following District's successful motion for summary judgment on Wycoff's claims of disability discrimination, retaliation, and failure to accommodate her disability, alleged to have occurred as a result of injury she sustained during the performance of her job.  Wycoff worked as a cafeteria worker and food services manager.

The trial court granted District's motion for summary judgment because it found Wycoff had not been fired, but had applied for, and been granted, an early retirement. The trial court found that District had not taken an adverse action against Wycoff when it informed her of placement on the 39-month rehire list, because such placement was

1

mandated by statute. The trial court further found that District offered Wycoff reasonable accommodation in the form of a modified part-time position as a food services manager. The court concluded Wycoff had elected to retire based on the economics of her situation.

Wycoff makes several undeveloped or underdeveloped arguments, including that District could not fire her while she was receiving workers' compensation disability payments, that the District did not adequately assess her injuries to determine whether there was a reasonable accommodation for her, that her physician's letter and her own testimony were insufficient evidence on which District could rely to determine her ability to work, and that there was insufficient evidence to support the trial court's conclusion that her continued employment constituted a danger to herself or to others.

We reject Wycoff's arguments on appeal.

FACTUAL AND PROCEDURAL BACKGROUND

Wycoff was a District employee from 1986 to 2009. In March 2009 she was working as a cafeteria worker for approximately four hours per day, and as a food services manager for 3 hours 15 minutes per day. The job description for a cafeteria worker required the ability to "stand, stoop, reach and bend," the ability to "grasp and manipulate small objects," and to "lift[], push[] and/or pull[] . . . objects which may approximate 50 pounds and may occasionally weigh up to 100 pounds."

In March 2009 Wycoff informed her immediate supervisor, Sue Horn, that she had sustained a right shoulder injury caused by repetitive use associated with her job. Wycoff, with Horn's assistance, completed a workers' compensation claim. From the time Wycoff reported her injury until the end of the 2008-2009 school year, District hired a substitute to fill Wycoff's position as a cafeteria worker. Wycoff had shoulder surgery on July 21, 2009.

Wycoff informed Horn that she would be able to return to work approximately three months after the surgery, or in approximately mid-October. District hired a

2

substitute for the 2009-2010 school year to fill Wycoff's position until she was able to return to work.

On August 26, 2009, District sent Wycoff a letter explaining her sick leave entitlements. The letter stated that while Wycoff was on disability (as of Mar. 25, 2009) she would be charged accrued sick and vacation leave. The letter stated that Wycoff would exhaust her available sick leave as of September 9, 2009. The letter also explained "five-month difference pay," stating that it began on the first day of absence, and that after Wycoff's sick leave was exhausted on September 9, 2009, she would be paid difference pay amounting to her salary minus the cost of a substitute employee to fill her position for up to five months if she remained disabled. During this time District would continue to pay its portion of her medical, dental, and vision insurance, and her portion would be deducted from her paycheck. The letter enclosed information on paid family leave, the board's policy on family care leave, and catastrophic leave. The letter suggested Wycoff contact someone to explore the availability of catastrophic leave. Wycoff received the letter, but disregarded it because she intended to be back to work before her leave entitlements were exhausted.

On September 21, 2009, District sent a memorandum to Wycoff, which Wycoff denied receiving. The memorandum informed Wycoff she had run out of sick leave, and that she would be receiving difference pay for absences incurred in the remainder of the school year.

On October 15, 2009, District sent another memorandum to Wycoff, which she admitted receiving. The memorandum stated: "The Payroll Department has notified me that you will run out of sick leave for the 2009/2010 school year on November 2, 2009. [¶] This is to inform you that you will be off payroll on November 3, 2009. At that time you will be placed on the 39-month rehire list. [¶] If you have any questions, please call Lisa Lipkin in the Payroll Department."

3

On October 22, 2009, District sent another letter to Wycoff. The letter informed Wycoff that her first day of absence was March 25, 2009, on which date her five-month difference pay period began, as well as her 60 days of "worker's compensation paid leave . . . ." The letter indicated that all available leave would be exhausted on November 2, 2009. The letter continued, "If you are still unable to return to work on November 3, 2009, you will (1) be in an unpaid status, and all leave entitlement through the [District] will end; and (2) you will be placed on the 39-month rehire list. This means that during the 39 months, if you recover from your injury and are released by your doctor to come back to work, you shall be employed in the next vacant position in the class of your previous position (Food Service) over all other available candidates . . . ."

The letter informed Wycoff that she could submit a written request to the board of trustees for additional leave pursuant to Education Code section 45196.[1] The letter warned that the Board might not approve the request. Finally, the letter informed Wycoff that her medical, dental, and vision benefits would end on November 30 unless she returned to work. The letter included a copy of Education Code section 45192 regarding the placement on the 39-month reemployment list.[2]

---

[1]    Education Code section 45196 deals with differential pay, rather than the ability of the school board to approve additional leave. That provision is found in Education Code section 45192, a copy of which was also included in the letter, and the terms of which are set forth, *post*.

[2]    Section 45192 provides in pertinent part:

"Governing boards of school districts shall provide by rules and regulations for industrial accident or illness leaves of absence for employees who are a part of the classified service. . . .

"The rules and regulations shall include the following provisions:

"(a) Allowable leave shall not be for less than 60 working days in any one fiscal year for the same accident.

4

"(b) Allowable leave shall not be accumulative from year to year.

"(c) Industrial accident or illness leave will commence on the first day of absence.

"(d) Payment for wages lost on any day shall not, when added to an award granted the employee under the workers' compensation laws of this state, exceed the normal wage for the day.

"(e) Industrial accident leave will be reduced by one day for each day of authorized absence regardless of a compensation award made under workers' compensation.

"(f) When an industrial accident or illness occurs at a time when the full 60 days will overlap into the next fiscal year, the employee shall be entitled to only that amount remaining at the end of the fiscal year in which the injury or illness occurred, for the same illness or injury.

"The industrial accident or illness leave of absence is to be used in lieu of entitlement acquired under Section 45191. When entitlement to industrial accident or illness leave has been exhausted, entitlement or other sick leave will then be used; but if an employee is receiving workers' compensation the person shall be entitled to use only so much of the person's accumulated or available sick leave, accumulated compensating time, vacation or other available leave which, when added to the workers' compensation award, provide for a full day's wage or salary.

"The governing board may, by rule or regulation, provide for as much additional leave of absence, paid or unpaid, as it deems appropriate and during this leave the employee may return to the person's position without suffering any loss of status or benefits. The employee shall be notified, in writing, that available paid leave has been exhausted, and shall be offered an opportunity to request additional leave.

"Periods of leave of absence, paid or unpaid, shall not be considered to be a break in service of the employee.

"During all paid leaves of absence, whether industrial accident leave as provided in this section, sick leave, vacation, compensated time off or other available leave provided by law or the action of a governing board, the employee shall endorse to the district wage loss benefit checks received under the workers' compensation laws of this state. The district, in turn, shall issue the employee appropriate warrants for payment of wages or salary and shall deduct normal retirement and other authorized contributions. Reduction of entitlement to leave shall be made only in accordance with this section.

Wycoff met with several District employees to discuss her options in late October 2009. She was offered part-time work as a food services manager, which would not require pulling, pushing, or lifting. However, she would not receive health insurance for part-time work. She was also told she could ask the school board to extend her leave. During these discussions, Wycoff brought up the possibility of taking early retirement, which was something one of her friends had suggested.

On October 22, 2009, Wycoff sent a letter to the District board requesting additional leave. Wycoff had a discussion with Susan Stutznegger, District's Assistant Superintendent of Financial Services, who explained to her that her letter requesting additional leave could not be submitted in time to be placed on the October agenda, and would have to be placed on the agenda for the November board meeting. She would be placed on the 39-month rehire list prior to the November meeting. When she went on the rehire list she would no longer be considered an employee, and would no longer have the option of early retirement with medical insurance. Thus, if the District board did not grant her leave request, she would not have the option of early retirement.

Five days later, on October 27, 2009, Wycoff sent a second letter to the District board stating, "I am applying for Early Retirement plus Medical Plan Benefits, from the Paradise Unified School District on this day October 27th 2009." On November 2, 2009, Wycoff was cleared to return to work with the restrictions that she do no overhead work with her right arm and lift no more than 20 pounds. The Board met November 17, 2009.

_____

"When all available leaves of absence, paid or unpaid, have been exhausted and if the employee is not medically able to assume the duties of the person's position, the person shall, if not placed in another position, be placed on a reemployment list for a period of 39 months. When available, during the 39-month period, the person shall be employed in a vacant position in the class of the person's previous assignment over all other available candidates except for a reemployment list established because of lack of work or lack of funds, in which case the person shall be listed in accordance with appropriate seniority regulations."

It accepted Wycoff's letter of retirement. At the time of Wycoff's retirement, she was still receiving workers' compensation temporary disability payments.

Wycoff filed a complaint against District alleging the following causes of action: (1) physical disability discrimination in violation of the Fair Employment and Housing Act (FEHA); (2) Retaliation because of a physical disability and because a workers' compensation claim was filed; (3) intentional infliction of emotional distress; (4) negligent infliction of emotional distress; (5) negligent supervision; and (6) failure to accommodate a physical disability. Following District's successful demurrer to the third, fourth, and fifth causes of action, the trial court dismissed those causes of action.

District's summary judgment motion was directed to the first, second, and sixth causes of action.

## DISCUSSION

"A trial court properly grants a motion for summary judgment only if no issues of triable fact appear and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); see also *id.,* § 437c, subd. (f) [summary adjudication of issues].) The moving party bears the burden of showing the court that the plaintiff 'has not established, and cannot reasonably expect to establish, a prima facie case . . . .' [Citation.] On appeal from the granting of a motion for summary judgment, we examine the record de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party. [Citation.]" (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)

"Though summary judgment review is de novo, review is limited to issues adequately raised and supported in the appellant's brief. [Citations.] 'As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which

7

have been adequately raised and briefed.'  [Citation.]"  (*Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125-126.)

I

Disability Discrimination

Wycoff's opening brief on appeal does not explain how she claims the trial court's findings were wrong.  Instead, her first point is that an employee may not be discharged while on workers' compensation temporary disability.  Unfortunately, she provides no authority for this point, nor is it supported in her brief with any argument.  Because the trial court's judgment is presumptively correct, "an appellant must do more than assert error and leave it to the appellate court to search the record and the law books to test his claim."  (*Yield Dynamics, Inc. v. TEA Systems Corp*. (2007) 154 Cal.App.4th 547, 557.) Where there is no argument or citation to authority on a particular point, we treat it as waived and pass on it without consideration.  (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545-546.)

Instead of arguing the point made in her heading, Wycoff recites that the purpose of temporary disability payments is to provide interim wage replacement to an injured worker, that the obligation to pay temporary disability is tied to the employee's incapacity to work, and that the obligation to pay temporary disability ends when the employee returns to work or when her condition achieves permanent and stationary status.  As indicated, this is merely a recital, without argument.

There is one argument that appears under Wycoff's unrelated heading.  It is her claim that District could not have assessed whether she reasonably could be accommodated because it never did a study of her ability to perform her essential job duties.  No authority is cited for the proposition that an employer must do its own study of an injured person's ability to perform essential job functions, and the undisputed facts of this case are sufficient to establish Wycoff's inability to perform the essential functions of her job as of the time she submitted her retirement letter.  The job

8

description for a food service assistant (cafeteria worker) required that the worker have "mobility of arms to reach" and indicated the job required reaching as well as "frequent lifting, pushing and/or pulling of objects which may approximate 50 pounds and may occasionally weigh up to 100 pounds."

Wycoff's release for work from her physician, dated October 22, 2009, placed the following restrictions on her ability to work: "no overhead work with right arm and no lifting over 20 lbs." Wycoff's immediate supervisor stated that with those restrictions, Wycoff was not able to do the basic and essential job duties of a cafeteria worker, and that she was aware of no accommodation that would have made it possible for Wycoff to perform that job. Wycoff admitted in her deposition that "most if not all of [her] essential job functions were problematic for [her] right shoulder . . . ." She admitted there was no way she could have returned to work in her prior capacity in October 2009. She stated that at the time of the deposition (June 9, 2011) she still could not do the work that she did five years prior, and that it was still painful when she engaged in repetitive lifting, pushing, and pulling. At that time (June 9, 2011) she was still not allowed to do overhead work with her right arm or lift more than 20 pounds.

Given this undisputed evidence, there was no requirement that District do more to ascertain Wycoff's ability to perform her job.

Wycoff also argues that it was unclear whether the weight restriction on her ability to lift applied to total weight or total weight lifted by the right arm. This is a specious argument. The restriction was from Wycoff's own physician. If she believed the doctor's note was unclear, it was incumbent upon her to seek clarification in order to allow her return to work. (*Nadaf-Rahrov v. Neiman Marcus Group, Inc*. (2008) 166 Cal.App.4th 952, 978 (*Nadaf-Rahrov*) [plaintiff bears the burden of proving she was able to perform the essential functions of the job with accommodation].) Likewise, if she believed she could do all the lifting and pushing necessary to perform her job

requirements using only her left arm, it was incumbent on her to make the case that she could return to work without accommodation. She did neither of these.

## II
### Failure to Engage in Interactive Process

In the second heading of Wycoff's opening brief, she purports to claim that District was engaged in a pretext by claiming to have engaged in the interactive process. She argues that District should not have relied solely on her statements and District's own employee to determine she was unable to perform the tasks of another position. The argument is misguided.

Even if Wycoff was able to perform the functions of some unnamed position, her supervisor averred there were no full-time vacant positions available to accommodate her, and Wycoff was offered, and refused, the part-time position that could have been modified to accommodate her disability.

Wycoff attempts to equate the facts of her case with those in *Nadaf-Rahrov, supra,* 166 Cal.App.4th 952. However, the plaintiff in that case was able to adduce facts not present here. Nadaf-Rahrov produced evidence there were other open positions at Neiman Marcus that she was qualified to perform, and her doctor averred that she physically could have performed several such jobs. (*Id.* at p. 968.)

By contrast, here the only evidence from Wycoff's physician was that as of November 2, 2009, she could not do any overhead work with her right arm and she could not lift over 20 pounds. Wycoff admitted in her deposition that when school started in the fall of 2009 she was not physically able to do the essential job functions of her job as a cafeteria worker or as a food services manager. The job description for Wycoff's job as a cafeteria worker required that she be able to reach and lift, push, and pull objects weighing up to 100 pounds. There was evidence Wycoff did not request any accommodation that was not granted to her, including, presumably, working in a different position for which she was qualified, if any such position existed. " '[T]he interactive

10

process of fashioning an appropriate accommodation lies primarily with the employee.' [Citation.]" (*King v. United Parcel Service, Inc*. (2007) 152 Cal.App.4th 426, 443.)  It is the plaintiff's obligation " 'to tender a specific request for a necessary accommodation.' [Citation.]" (*Ibid.*)

This case differs from *Nadaf-Rahrov* because the evidence from Wycoff's physician regarding her ability to perform the essential functions of her job was unequivocal, because Wycoff admitted she was unable to perform her job functions, and because Wycoff made no request for accommodation in the form of another available position.

### III
### Labor Code Section 4656

Wycoff's third argument is that District violated Labor Code section 4656 when it took her off of payroll on November 3, 2009.  Labor Code section 4656 provides in pertinent part:

> "Aggregate disability payments for a single injury occurring on or after April 19, 2004, causing temporary disability shall not extend for more than 104 compensable weeks within a period of two years from the date of commencement of temporary disability payment."  (Labor Code, § 4656, subd. (c)(1).)

Wycoff argues District violated Labor Code section 4656 by telling her prior to the expiration of the 104-week period during which she was entitled to temporary disability payments that she would no longer receive payment of her salary.  This argument makes no sense.  The fact that Wycoff would no longer be receiving her salary from District has nothing to do with her receipt of temporary disability indemnity payments pursuant to the workers' compensation laws.

### IV
### Evidence Wycoff was a Danger to Self or Others

Wycoff's final argument is that there was insufficient evidence to support the trial court's finding that her continued employment constituted a danger to herself or to others.

11

Wycoff argues there was no medical evidence to support the fact. In fact, the court did not make such a finding. Instead, it found that District "had a good-faith concern" that if Wycoff had returned to her cafeteria worker position, she would have posed an unreasonable danger to coworkers, and there would have been an unreasonable risk of re-injury to her shoulder.

In any event, we will not disturb the judgment because the finding was not necessary to granting the summary judgment. A defendant moving for summary judgment bears the burden of showing that one or more elements of a cause of action cannot be established, *or* that there is a complete defense to the action. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) In this case, District established that Wycoff was unable to establish one or more elements of her three causes of action by showing that placement on the 39-month rehire list was not an adverse employment action, that Wycoff could not perform the essential duties of her job with or without reasonable accommodation, and that reasonable accommodation was offered and refused. A determination that an employee is a danger to herself or others is relevant to an affirmative defense to a claim of disability discrimination. (*Echazabal v. Chevron USA, Inc.* (9th Cir. 2003) 336 F.3d 1023, 1027.) Having established that Wycoff was unable to establish one or more elements of her causes of action, District was not additionally required to establish the affirmative defense that Wycoff was a danger to herself or others.

Wycoff pleaded three causes of action that survived demurrer: (1) disability discrimination, (2) retaliation, and (3) failure to accommodate a physical condition. District was required to show Wycoff had not established and could not reasonably expect to establish the elements of these claims. The finding that District had a good faith belief that Wycoff would endanger herself and others if returned to her position was not necessary to any of the three elements of a prima facie case of disability discrimination. The trial court's finding that any one element of the prima facie case

12

could not be established was sufficient to entitle District to summary adjudication on that cause of action.

The first cause of action for disability discrimination required District to show Wycoff could not establish: (1) the plaintiff suffered from a disability, (2) she could perform the essential duties of the job with or without reasonable accommodations, and (3) she was subjected to an adverse employment action because of the disability. (*Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 159-160.) The trial court found that Wycoff could not establish the second and third elements of a prima facie case because the notice that she would be placed on the 39-month rehire list was not an adverse employment action, and because she was unable to perform the essential functions of her job with or without reasonable accommodation.

District argued below that as a matter of law, placement on the 39-month rehire list was not an adverse employment action based on *Trotter v. Los Angeles County Bd. of Education* (1985) 167 Cal.App.3d 891. There, the court held that placement on the 39-month rehire list was not disciplinary, but "was a ministerial action which involved no discretion and which required merely reviewing appellant's records and determining when her sick and vacation leaves expired." (*Id.* at p. 896.) Wycoff makes no argument on appeal that the holding in *Trotter* is not applicable here.

An adverse employment action is also an element of a prima facie case of retaliation under the FEHA, Wycoff's second cause of action. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 ["in order to establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action."].) Thus, the finding that District had reason to believe plaintiff would pose a danger to herself and others if returned to her position was unnecessary to summary adjudication on that cause of action as well.

An employer moving for summary judgment on a claim of failure to reasonably accommodate, Wycoff's final cause of action, must establish: (1) that reasonable accommodation was offered and refused; (2) that there was no vacant position within the employer's organization for which the employee was qualified and which she was capable of performing with or without accommodation; *or* (3) that the employer did everything in its power to find a reasonable accommodation, but the interactive process broke down because the employee failed to engage in good faith discussions. (*Jensen v. Wells Fargo Bank* (2000) 85 Cal.App.4th 245, 263.)

The trial court found that District offered and provided reasonable accommodation. The court also found that Wycoff's immediate supervisor averred Wycoff was unable to do the basic and essential job duties of a cafeteria worker, and that there was no vacant position and no accommodation that would have allowed Wycoff to return to her position as a cafeteria worker without making other people do Wycoff's job or hiring another employee to assist Wycoff in doing her job. Given these findings, the court's additional finding that District had a good faith belief Wycoff would be a danger to herself and others if she returned to her former position was unnecessary to the decision to grant summary judgment.

Finally, Wycoff raises two arguments for the first time in her reply brief. She argues District was required to offer her additional leave as a reasonable accommodation, and that District ignored Government Code section 21153.[3] We will not consider these arguments. Arguments presented for the first time in the reply brief are forfeited. (*Mt. Hawley Ins. Co. v. Lopez* (2013) 215 Cal.App.4th 1385, 1426.)

---

[3]     Government Code section 21153 provides: "Notwithstanding any other provision of law, an employer may not separate because of disability a member otherwise eligible to retire for disability but shall apply for disability retirement of any member believed to be disabled, . . . ."

14

DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


                                                              BLEASE               , Acting P. J.


We concur:


      HULL                , J.


      BUTZ                , J.