Filed 6/6/24  Critical Path Construction v. Viking Structural CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CRITICAL PATH CONSTRUCTION, LLC,<br><br>     Plaintiff, Cross-defendant and Appellant,<br><br>          v.<br><br>VIKING STRUCTURAL, INC.,<br><br>     Defendant, Cross-complainant and Respondent. | G062439<br><br>(Super. Ct. No. 30-2021-01185121)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Nick A. Dourbetas, Judge.  Affirmed.

Flangas Law Group and Kimberly P. Stein for Plaintiff, Cross-defendant and Appellant.

National Choice Lawyers and Koorosh K. Shahrokh for Defendant, Cross-complainant and Respondent.

Critical Path Construction, LLC (Critical Path) sued Viking Structural, Inc. (Viking), alleging Viking breached the parties' master services agreement (the MSA) whereby Viking was to provide subcontractor work on a construction project owned by Critical Path. Viking filed a cross-complaint against Critical Path, alleging a claim for breach of the MSA and a common count for goods and services rendered. Following a bench trial, judgment was entered in Viking's favor on both the complaint and cross-complaint, awarding Viking damages in the amount of $47,725.84.

We affirm. For the reasons we explain, we conclude (1) Critical Path forfeited the argument the trial court erred by admitting extrinsic evidence to interpret the MSA, and (2) the court did not err in awarding damages to Viking.

FACTUAL AND PROCEDURAL BACKGROUND

I.

THE PLEADINGS

In its complaint, Critical Path alleged, on July 5, 2020, the parties entered the MSA whereby Viking agreed to provide structural steel work for a construction project in Los Angeles (the project). The complaint alleged, on July 15, 2020, Critical Path paid Viking a $24,500 retention payment, constituting 10 percent of the total estimated cost ($245,000) of Viking's performance under the MSA. Viking thereafter was to invoice Critical Path for payment for completed work.

The complaint further alleged, "[a]fter it became clear that [Viking] was not performing as required," Critical Path provided formal notice to Viking, demanding it perform under the MSA; Viking requested additional time. On October 21, 2020, Critical Path called a meeting offering Viking an additional bonus if it completed the work by December 4, 2020. In mid-November, after concluding Viking was not performing under the MSA, Critical Path retained another subcontractor to perform services that had not been provided by Viking. Critical Path alleged it performed as required under the MSA,

2

except to the extent its performance was waived, excused, or prevented by Viking's alleged breach of the MSA. Critical Path sought recovery of the retention fee it paid Viking and its attorney fees and costs.

Viking filed a cross-complaint against Critical Path, asserting a claim for breach of the MSA and a common count for goods and services rendered. Viking alleged the parties agreed on dates for the completion and payment of goods and services under the MSA, but as a result of circumstances outside of the parties' control, the parties agreed to extend the time for Viking to complete performance under the MSA to December 4, 2020. Viking further alleged it continued to perform its obligations under the MSA until Critical Path unilaterally and wrongfully terminated the MSA in mid-November 2020, and thereafter refused to pay Viking for goods it had purchased and services it had performed to date. Viking alleged it had performed under the MSA, except to the extent its performance was waived, excused, or prevented by Critical Path. Viking sought recovery of, inter alia, "[t]he reasonable value of the services performed and good[s] supplied" in the amount of $75,000.

II.

THE STATEMENT OF DECISION

Following the bench trial, the trial court issued a minute order in which it found Viking had fulfilled its obligations under the MSA but Critical Path breached the MSA, causing Viking to sustain damages in the "stipulated amount of $47,725.84." After Critical Path filed a request for a statement of decision, at the trial court's direction, Viking prepared a proposed statement of decision and judgment, to which Critical Path filed objections. The trial court tacitly overruled Critical Path's objections by adopting

3

Viking's proposed statement of decision as its own, which set forth the court's findings, summarized as follows.

The MSA, which was entered into by Mehryar Michael Parsee, as owner and president of Critical Path, and Tomick Sarkissian, on behalf of Viking,[1] provided "time [was] of the essence" with regard to performance under that agreement. The MSA also provided, however, in the event Critical Path caused a delay, Viking would be entitled to a reasonable extension of time to perform.

Shortly after Viking joined the project, Critical Path terminated project manager and/or general contractor Shiraz Construction and hired a replacement, causing a three- to four-week delay of the project. Another delay of one and one-half months was caused by problems with the shop drawings Viking received which had been prepared by Shiraz Construction. In addition, Viking was unable to install base plates provided under the MSA because the necessary concrete was not poured until after September 23, 2020.

The court found Viking to have performed according to the MSA, having acted "swiftly to try and finish this job." The court noted Sarkissian's testimony Viking had hoped to secure more business with Critical Path beyond its part in the instant project, which was worth $8 million, and in that effort had given Critical Path "a little bit of a better deal." The court also found Sarkissian "very responsive" in e-mail communications with Critical Path and others involved in the project.

In terms of deadlines under the MSA, the court also noted "testimony about anticipated supply chain issues," and found: "As a result, things didn't really work out to be on time pursuant to the MSA. The parties went back and forth and Mr. Parsee gave an extension on the MSA [Parsee testified Viking's scope of work under the MSA was originally to be finished by October 1, 2020 ] and the court finds that the parties acted in a fluid ma[nn]er when it came to dates on this MSA." The court found on October 21,

_____

[1] Sarkissian testified he is a former co-owner and responsible managing officer of Viking.

4

2020, Critical Path and Parsee provided Viking an extension to complete Viking's portion of the project, which the parties agree was until December 4, 2020. The court also noted evidence Viking's portion of the project, including the installation of columns and base plates, was about 40 percent complete by mid-November 2020. The court found Critical Path breached the MSA by terminating the MSA before December 4, 2020.

### III.

### JUDGMENT IS ENTERED IN FAVOR OF VIKING

Judgment was entered in favor Viking on both Critical Path's complaint and Viking's cross-complaint, awarding Viking damages in the amount of $47,727.84 against Critical Path on the cross-complaint. The judgment further provided Viking was to recover attorney fees and costs as allowed under the MSA after filing a memorandum of costs.[2]

Critical Path timely filed a notice of appeal.

## DISCUSSION

### I.

### CRITICAL PATH FORFEITED ITS CONTENTION OF EVIDENTIARY ERROR

In the opening brief, Critical Path argues "the trial court erred when it considered extrinsic evidence because the MSA was unambiguous and Viking failed to perform under the terms of the MSA." (Boldface, underscoring, and some capitalization omitted.) In interpreting a contract, the "basic goal" is "to give effect to the parties' mutual intent at the time of contracting." (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955.) Whether extrinsic evidence is properly admitted to explain the meaning of a written instrument "'is not whether it appears to the court to be plain and unambiguous on its

_____

[2] Our record is silent as to any postjudgment award of attorney fees and costs. In any event, no issue regarding such an award is before us in this appeal.

5

face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.'" (*Ibid.*)

Critical Path, however, failed to identify or even describe the specific evidence, whether testimonial and/or documentary, it argues was improperly admitted at trial to aid in the interpretation of the MSA. Critical Path does not address its contention of evidentiary error at all in its reply brief.

It is fundamental to appellate review "(1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error." (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.) Rule 8.204(a)(1)(C) of the California Rules of Court provides each appellate brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears. If any part of the record is submitted in an electronic format, citations to that part must identify, with the same specificity required for the printed record, the place in the record where the matter appears."

Even if in its appellate briefs Critical Path had specifically identified the evidence it argues the trial court should not have admitted, and provided corresponding citations to the record, its contention of evidentiary error would fail because it did not show it ever objected to the admission of extrinsic evidence in the trial court. Evidence Code section 353, subdivision (a) provides a judgment shall not be reversed by reason of the erroneous admission of evidence unless, inter alia, "[t]here appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion." (See *Crouch v. Trinity Christian Center of Santa Ana, Inc.* (2019) 39 Cal.App.5th 995, 1020 ["The failure to object or move to strike evidence at trial forfeits any challenge to the evidence on appeal"].)

Our review of the record shows the words "extrinsic evidence" do not appear in either the reporter's transcript or the clerk's transcript, much less an objection to the proposed admission of any such evidence. Our record does not contain any motions in limine. Critical Path has therefore failed to preserve its argument for appeal on this ground as well.

Finally, Critical Path has failed to address how the admission of any extrinsic evidence was prejudicial to its case. Evidence Code section 353, subdivision (b) provides a judgment shall not be reversed "by reason of the erroneous admission of evidence" unless "[t]he court which passes upon the effect of the error or errors is of the opinion that the admitted evidence should have been excluded on the ground stated and that the error or errors complained of resulted in a *miscarriage of justice*." (Italics added.) Critical Path's appellate briefs do explain how the erroneous admission of any particular evidence might have resulted in a miscarriage of justice.

For all the foregoing reasons, Critical Path's contention of evidentiary error is forfeited.

In its opening brief, under the same heading asserting the trial court erred by admitting extrinsic evidence, Critical Path argues: "Even if the trial [c]ourt could consider such extrinsic evidence in interpreting the MSA, the record is clear that Viking failed to perform and its failure was not due to Critical Path." In support of its argument, Critical Path cites the MSA's "time is of the essence" provisions and argues "[h]ere, there is no evidence that Critical Path, as the owner, caused the delay in Viking's performance or in any way prevented Viking's performance."

By failing to place its argument under a separate heading or subheading, Critical Path failed to comply with rule 8.204(a)(1)(B) of the California Rules of Court which requires it to "[s]tate each point under a separate heading or subheading." In any event, Critical Path's argument is based on a faulty premise—that insufficient evidence supported the trial court's finding Critical Path caused delays affecting Viking's ability to

perform within the original timeframe set forth in the MSA.  Substantial evidence showed delays were caused by Critical Path's replacement of the project manager and/or general contractor with a new project manager and/or general contractor shortly after the MSA was signed, there were problems with the shop drawings prepared by another contractor upon which Viking's work depended, and the pouring of concrete, predicate to the performance of Viking's scope of work, was delayed.  Substantial evidence showed these delays were caused by Critical Path and/or its contractors, and not by Viking.  Furthermore, the court expressly found Sarkissian to have been very responsive in communications directed at expediting Viking's performance under the MSA.  It also found Parsee generally credible but lacking in personal knowledge of Viking's efforts to comply with the MSA's timeframe.

While it is undisputed the MSA contained time is of the essence provisions, it also provided for Viking to receive reasonable extensions of time to perform its scope of work.  Significantly, as found by the court and testified to by both Parsee and Sarkissian, the parties indisputably agreed to extend the time Viking had to perform under the MSA until December 4, 2020.  Critical Path breached the MSA by terminating it in November, depriving Viking of the opportunity to fully perform under the MSA within the extended time period agreed to by the parties.

There are several problems with Critical Path's argument that, notwithstanding the parties' undisputed agreement Viking had until December 4, 2020 to perform, the agreed upon extension was not enforceable by Viking because it was not a written document as required by the provision in the MSA requiring all amendments to be in writing.  Among those problems is the fact the MSA also provided for reasonable extensions of time for delays caused by Critical Path.  Consequently, the parties' agreement to extend the time for Viking's performance did not necessarily constitute an *amendment* within the meaning of the amendment provision of the MSA as such an extension was already baked into the MSA.

In any event, evidence was presented of a writing memorializing the parties' agreement extending the MSA performance date. During his direct examination of Sarkissian at trial, Critical Path's counsel elicited testimony Viking received an e-mail from Critical Path stating it would offer Viking a 10 percent bonus "provided that [Viking] do certain things: fully perform all the terms of the contract, maintain your appointments with us and other people, finish the work by December 4th." Critical Path does not address why this e-mail is insufficient to satisfy the written amendment requirement of the MSA. Furthermore, even if no enforceable extension of the MSA existed, that substantial evidence supports the trial court's finding Critical Path was responsible for delays in Viking's performance might trigger the application of Civil Code section 1511, which provides delayed performance is excused "[w]hen such performance . . . prevented or delayed by the act of the creditor . . . even though there may have been a stipulation that this shall not be an excuse."

We find no error.[3]

## II.

### THE TRIAL COURT DID NOT ERR IN AWARDING DAMAGES TO VIKING

Critical Path argues the trial court erred by awarding Viking $47,725.84 in damages on its cross-complaint. In its opening brief, Critical Path argues "the trial [c]ourt ignored the testimony and made an incorrect finding that the damages were a stipulated amount" and insufficient evidence supports the amount of damages awarded. Critical Path's arguments are without merit.

---

[3] In its reply brief, Critical Path argues for the first time the trial court erred by "allowing Viking to prevail on [the] unpled affirmative defense" of impossibility "to justify any alleged breach of the MSA." (Boldface and some capitalization omitted.) This argument is forfeited. (*Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 427–428 [arguments raised for the first time in the appellant's reply brief are forfeited]; *Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125 ["an appellant's failure to discuss an issue in its opening brief forfeits the issue on appeal"].)

At trial, Sarkissian testified that as of the date the MSA was terminated by Critical Path, Critical Path owed Viking a gross amount of $98,000 for the goods and services provided to date. Sarkissian testified the $24,500 retention fee Viking already received from Critical Path should be deducted from that gross amount, as well as an additional $23,302.33 constituting the amount Viking would have paid a supplier had it been allowed to complete performance under the MSA, but did not. After these deductions, according to Sarkissian's testimony, Viking was owed a net amount of $50,197.67 for its performance under the MSA until that agreement was terminated.

In addition, Sarkissian testified about additional damages sustained by Viking due to Critical Path's breach of the MSA, including: Viking's loss of the 10 percent bonus Critical Path had promised Viking if the latter completed performance by December 4, 2020; Viking's loss of profit on the unperformed remainder of the MSA (Sarkissian testified at trial Viking typically expected to earn a 20 percent profit but had previously testified in his deposition about an expectation of making only a five percent profit on the MSA) had Critical Path not terminated it; and Viking's lost opportunity damages in the form of its loss of the availability of a reduced rate for it to buy materials from a certain supplier due to Critical Path's breach of the MSA and the concomitant strain that breach caused to Viking's relationship with the supplier.

During Critical Path's counsel's redirect examination of Sarkissian, the trial court stated it needed some clarification regarding damages, suggested then taking the afternoon recess, and offered Sarkissian a notepad to help track damages. Following the afternoon recess, the parties' counsel and the trial court engaged in the following colloquy regarding a "stipulation" of Viking's damages on the cross-complaint:

"[Viking's counsel]: Your Honor, I think we have a stipulation on damages so that things are clear for your Honor, hopefully. [¶] . . . [¶]

"[Critical Path's counsel]: Okay. So what -- and jump in if I'm wrong -- the damages claimed in the cross-complaint by Viking are a total of $74,697.67. That

10

number is comprised of the [$]70,000-something number outlined in the expenses or costs in exhibit 20.

"The Court:  Hold on a second.  That number in exhibit 20 was [$]71,028.17.[4]  But then we have testimony that the 23 --

"[Critical Path's counsel]:  And that's next.  So we're going to take that 70 minus the 23.  We get to [$]50,197 --

"The Court:  Let me get there real quick.  So we've got the --

"[Critical Path's counsel]:· $71,028.17.  And then we take out -- we take out the [$]23,302.33 [for the amount Viking did not have the chance to pay the material provider].  And that number is [$]47,725.84.

"The Court:  [$]47,725.84.

"[Critical Path's counsel]:  Right.  And just so I can make sure I run through it again so I completely understand it, [$]74,000 is this [$]47,000 plus the [$]24,500 paid around the time the contract was signed.

"The Court:  The 10 percent deposit.

"[Critical Path's counsel]:  The [$]24,500 pursuant to exhibit 2-10.

"The Court:  The first -- first -- the first deposit, 10 percent?

"[Critical Path's counsel]:  Yeah.

"The Court:  Okay.

"[Critical Path's counsel]:  And since that's already been paid, because we've all agreed -- *I think we can stipulate that [$]24,5[00] has been paid -- but since that already has been paid, the damages number is reduced to [$]47,725.84.*

---

[4]  Sarkissian testified Viking had sent Critical Path an invoice on November 10, 2020 charging Critical Path $73,500 for the installation of columns, but subsequently sent Critical Path a reduced invoice in the amount of about $71,000.  This unilateral reduction by Viking of the amount due was apparently also reflected in trial exhibit 20.  No party has filed a notice seeking the transmittal of exhibits pursuant to rule 8.224 of the California Rules of Court.

11

"[Viking's counsel]: I'll stipulate to that.

"[Critical Path's counsel]: And I think I know why you're making face. It's because I used the original [$]73,5[00] and not the [$]71[,000].

"[Viking's counsel]: I'm okay with this, your Honor. Just to make sure that we're clear, I realize it's easier than spending more time arguing about it.

"The Court: So the amount sought net, at this point, by Viking in its cross-complaint is $47,725.84?

"[Viking's counsel]: I'm fine with that, your Honor. I'll stipulate to that.

"[Critical Path's counsel]: Yes, your Honor. [¶] The reason I brought up the [$]23,000 deduction -- 'cause we have obviously other arguments, but I want to make sure you knew what was accounted for and what was not.

"The Court: Thank you. I want to thank both counsel for that clarification. [¶] . . . [¶]

"By [Critical Path's counsel]:

"Q. Okay. So on the record, *we've already stipulated to the damages number*, so I can move on." (Italics added.)

Given the parties' counsel's discussion and reference to Viking's stipulated damages in the amount of $47,725.84, the trial court did not err by referencing the stipulation in that amount when awarding Viking $47,725.84 in its statement of decision and in the judgment. In its proposed statement of decision, the trial court stated: "As to whether, and in what amount, Viking Structural, Inc. has been damaged by Critical Path Construction, LLC's breach of their agreement, the Court finds for Viking Structural, Inc. in the stipulated amount of $47,725.84."

Notably, Critical Path did not object to the proposed statement of decision on the ground the court's reference to the "stipulated amount" of damages was ambiguous, or bring any omissions in the statement of decision's factual findings as to damages to the trial court's attention. "'Securing a statement of decision is the first step,

12

but is not necessarily enough, to avoid the doctrine of implied findings. Litigants must also bring ambiguities and omissions in the statement of decision's factual findings to the trial court's attention—or suffer the consequences. Code of Civil Procedure section 634 states *if* omissions or ambiguities in the statement of decision's factual findings are timely brought to the trial court's attention, "it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue."'" (*Ochoa v. Anaheim City School Dist.* (2017) 11 Cal.App.5th 209, 235.) The above described testimony by Sarkissian constituted sufficient evidence to support the amount of damages awarded by the trial court.

In its opening brief, Critical Path also argues "the trial [c]ourt incorrectly included profits in the damages awarded to Viking to which they are not entitled to . . . based on failure to complete the work under the MSA." Not so. As set forth *ante*, Sarkissian testified that in addition to the $47,725.84 in damages Viking incurred with regard to goods provided and services it rendered until Critical Path terminated the MSA, Viking anticipated earning a profit on the unperformed remainder of the MSA in the amount of $29,400, if it could expect a 20 percent profit, or $7,350, if it could expect a five percent profit. The record shows the trial court did not add to the $47,725.84 stipulated damages amount for Viking's completed work, and thus did not also award Viking damages for its future lost profits on the remaining unperformed portion of the MSA caused by Critical Path's breach.

## DISPOSITION

The judgment is affirmed.  Respondent to recover costs on appeal.


MOTOIKE, J.

WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.