Filed 11/6/24  In re W.M. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| In re W.M., a Person Coming Under the Juvenile Court Law. | B336574 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>M.M.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 21LJJP00396C) |

APPEAL from order of the Superior Court of the County of Los Angeles, Donald A. Buddle, Jr., Judge.  Conditionally Reversed in Part and Remanded.

Janelle B. Price, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

W.M. (born 2022) was declared a dependent shortly after her birth. M.M. (mother) appeals from the order terminating her parental rights. Mother contends the Los Angeles County Department of Children and Family Services (DCFS) and the juvenile court failed to comply with the inquiry and notice provisions of the Indian Child Welfare Act (ICWA, 25 U.S.C. § 1900, et seq.) and related California law, the California Indian Child Welfare Act (Cal-ICWA; Welf. & Inst. Code,[1] § 224 et seq.). The juvenile court found it had no reason to know that ICWA applied to W.M., relying on denials of Indian[2] ancestry from both parents and three other relatives. However, DCFS did not ask multiple known extended family members about possible Indian ancestry. We conditionally reverse and remand.

## BACKGROUND

As the parties are familiar with the facts and procedural history of the case, we do not restate those details in full here.

_____

[1] Unless otherwise specified, subsequent statutory references are to the Welfare and Institutions Code.

[2] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

2

Below, we discuss only the facts and history as needed to resolve the issue presented on appeal.

In a separate dependency case, the juvenile court sustained a section 300 petition alleging that W.M.'s father, Daniel M. (father), sexually abused W.M.'s half-sister. The day after jurisdiction was terminated, W.M. was born, and DCFS received a referral for W.M.

Before W.M. was removed from mother and father in February 2022, DCFS spoke with them and several relatives. A social worker interviewed maternal great-grandmother, maternal step-grandmother (Kym S.), and one maternal aunt (Teresa S.) but did not ask them about possible Indian ancestry. Parents were asked to identify relatives with whom W.M. could be placed. During these conversations, the parents identified paternal grandmother (MaryAnn B.),[3] her husband (Jonathan), and two paternal aunts, one in California and another in Indiana. A social worker spoke with paternal grandmother but did not question her about possible Indian ancestry.

At the detention hearing in March 2022, the juvenile court acknowledged the parents' Parental Notifications of Indian Status indicating they had no Indian ancestry. The juvenile court found no reason to believe or know W.M. was an Indian child and did not order notice to any tribe or the Bureau of Indian Affairs.

The juvenile court sustained a section 300 petition that alleged, among other things, father's sexual abuse of W.M.'s half-sister and mother's failure to protect W.M. from father. During

---

[3] Mother refers to MaryAnn B. as MaryAnn M. and describes her as W.M.'s paternal grandmother. For consistency, we will refer to her as MaryAnn B.

3

the reunification period, DCFS filed reports detailing parents' visits. An entry dated July 28, 2022 states, "Mom also talked to [W.M.] about the many aunts that she has. Mom named [K]rystal, Jen, T[ ]eresa, Michelle, and other relatives."[4]

Reunification services were terminated in early 2023, and a permanency planning review hearing was set. In January 2023, DCFS spoke with maternal aunt Krystal D. about the possibility of placing W.M. with her, but no questions were asked about possible Indian heritage. In June 2023, DCFS filed "an updated ICWA inquiry" stating that W.M.'s maternal grandmother was interviewed, and when asked if she had Indian heritage, her response was "'Not that I am aware of.'"

In August 2023, DCFS prepared and filed an attorney order that stated: "DCFS shall interview/attempt to interview all extended family members, including but not limited to, Maternal Great Grandmother (Virginia B.), Maternal Aunt (Teresa S.), Paternal Aunt (Michell [*sic*] A.), and Paternal Uncle (Steve A.), about whether the child is, or may be, an Indian child as required by WIC section 224.2, subd. (b)." The order also stated that DCFS would "document all its efforts and submit a written report on the results of the interviews/attempts to interview all extended family members" before the permanency planning hearing. The juvenile court signed the order on August 17, 2023.

On August 25, 2023, DCFS filed a report with "Updated ICWA Information." It reported that paternal aunt (who identified herself as Michelle V.) and spouse (who identified himself as Steve V.) stated they were unaware of whether they or

---

[4] Maternal aunt Krystal D. is sometimes identified in the record as Crystal D. and Crystal D-G. For consistency, we will refer to her as Krystal D.

4

W.M. had Indian ancestry. DCFS reported a voicemail had been left for maternal aunt Teresa S. requesting a return call. In a mid-September 2023 report, DCFS provided "ICWA Updates" stating that both parents were asked for any new information regarding Indian ancestry, and both reported they had none. DCFS filed no other report about ICWA inquiries before the permanency planning hearing.

At an initial permanency planning hearing, the juvenile court did not make a finding that DCFS had interviewed all available extended family members, but it found it did "not have a reason to know that ICWA applies" as to mother or father. A continued permanency planning hearing was held in April 2024, and the juvenile court terminated parental rights.

Mother timely appealed from the order terminating her parental rights.[5]

## DISCUSSION

Mother contends DCFS's inquiry was insufficient because it did not interview all extended family members about potential Indian ancestry. DCFS concedes its inquiry was limited to mother, father, maternal grandmother, one paternal aunt, and her spouse, but it argues the juvenile court's finding that ICWA did not apply should nevertheless be affirmed.

---

[5] Although the notice of appeal refers to an order denying a section 388 petition, mother has not discussed this order in her briefs, and thus, has forfeited any claims of error. (*Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th 118, 125.)

## A. Governing Law

Congress enacted ICWA "to promote the stability and security of Indian tribes and families by establishing minimum standards for removal of Indian children from their families and placement of such children 'in foster or adoptive homes which will reflect the unique values of Indian culture . . . .'" (*In re Levi U.* (2000) 78 Cal.App.4th 191, 195, quoting 25 U.S.C. § 1902.) ICWA recognizes that "'the tribe has an interest in the child which is distinct from but on a parity with the interest of the parents.'" [Citation.]" (*Dwayne P. v. Superior Court* (2002) 103 Cal.App.4th 247, 253.)

"ICWA provides as to dependency proceedings, '[W]here the court knows or has reason to know that an Indian child is involved, the party seeking . . . termination of parental rights to . . . an Indian child shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention.'" (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 428 (*Antonio R.*), citing 25 U.S.C. § 1912(a).) "California law similarly requires notice to the Indian tribe and the parent, legal guardian, or Indian custodian if the court or the Department 'knows or has reason to know' the proceeding concerns an Indian child." (*Ibid.*, § 224.3, subd. (a); Cal. Rules of Court, rule 5.481(c)(1).) "The notice requirement is at the heart of ICWA because it 'enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding.' [Citation.]" (*Id.* at p. 429; see 25 U.S.C. § 1912(a); § 224.3, subd. (d).)

The juvenile court and DCFS "'ha[d] an affirmative and continuing duty to inquire whether a child for whom a petition

under Section 300 . . . may be or has been filed, is or may be an Indian child." (*Antonio R., supra*, 76 Cal.App.5th at p. 429, quoting § 224.2, subd. (a).) "'The continuing duty to inquire whether a child is or may be an Indian child "can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice."' [Citation.]" (*Ibid.*)

"'The duty to inquire begins with initial contact (§ 224.2, subd. (a)) and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child. (§ 224.2, subds. (a)–(c)).' [Citation.]" (*Antonio R., supra*, 76 Cal.App.5th at p. 429.) Section 224.2, subdivision (b) imposes on DCFS a duty of inquiry that includes, "'but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . .'" (*Id.* at pp. 429–430; see Cal. Rules of Court, rule 5.481(a)(1).) "Under ICWA, the term 'extended family member' is 'defined by the law or custom of the Indian child's tribe or, in the absence of such law or custom, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent.'" (*Id.* at p. 430, quoting 25 U.S.C. § 1903(2); see § 224.1, subd. (c).)

A "juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1141 (*Dezi C.*), citing § 224.2, subd. (i)(2).) "'On a well-

developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes.' [Citation.]" (*In re Kenneth D.* (2024) 16 Cal.5th 1087, 1101–1102.) In this district, we generally review the juvenile court's ICWA findings for substantial evidence, and when the material facts at issue are undisputed, we review independently whether ICWA requirements have been satisfied. (*In re J.K.* (2022) 83 Cal.App.5th 498, 504.)

"If, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law (rule 5.481(a)(5)), there is no error and conditional reversal would not be warranted even if the agency did not inquire of everyone who has an interest in the child." (*Dezi C.*, *supra,* 16 Cal.5th at p. 1141].) "On the other hand, if the inquiry is inadequate, conditional reversal is required so the agency can cure the error and thereby safeguard the rights of tribes, parents, and the child." (*Ibid.*)

## B.    Sufficiency of DCFS's Inquiry

Mother argues that DCFS's inquiry was deficient because it failed to ask multiple known relatives about possible Indian ancestry, including maternal step-grandmother, paternal grandmother and her spouse, a maternal aunt, a second maternal aunt and her fiancé, and two paternal aunts. We agree.

Inquiries have been held insufficient where the agency failed to ask the dependent child's known extended family members about possible Indian ancestry. (See *In re L.B.* (2023)

98 Cal.App.5th 512, 519 ["[N]otwithstanding the availability of and contact with multiple members of L.B.'s extended family, there seems to have been no attempt to ask those relatives about L.B.'s ancestry. For that reason, the inquiry was inadequate as a matter of law . . . ."]; *In re J.W.* (2022) 81 Cal.App.5th 384, 389 [Department "did not ask Mother's extended family members about their Indian ancestry, despite having contact with maternal grandmother, uncle, and aunt. This was a violation of California law"].)

DCFS did not make ancestry inquiries of four extended family members with whom social workers had spoken. Before the detention hearing, social workers spoke with maternal step-grandmother and one maternal aunt, Teresa S., but did not ask them about possible Indian ancestry. Social workers also spoke to paternal grandmother and a second maternal aunt, Krystal D., about placement of the child but did not ask them any ancestry questions, either. DCFS does not dispute these persons were statutory extended family members or that they were not asked about their heritage.

DCFS asserts that W.M.'s parents, maternal grandmother, and one paternal aunt and her spouse "reliably answered" the question of whether there was reason to believe W.M. was an Indian child. It further argues that having to ask additional relatives would have been "'absurd at best and impossible at worst.' [Citation.] (*In re E.W.* (2023) 91 Cal.App.5th 314.)"

DCFS's position "ignores the express obligation that section 224.2, subdivision (b), imposes on [DCFS] to inquire of a child's extended family members—regardless of whether the parents deny Indian ancestry." (*Antonio R., supra*, 76 Cal.App.5th at p. 431; *In re S.S.* (2023) 90 Cal.App.5th 694, 701 ["[E]xtended

9

family members can have tribal information the parents lack, or have forgotten, or refuse to divulge"].) DCFS is correct that the general statutory duty "does not require inquiry with every adult living extended family member," and is "not intended to obligate county welfare departments to search for possible Indian ancestry without regard to cost or other practical considerations." (*In re H.B.* (2023) 92 Cal.App.5th 711, 720 (*H.B.*).) However, in this case, DCFS actually spoke to four relatives without inquiring about possible Indian ancestry, and it also failed to make inquiries other relatives who were identified during the case.[6] (See *In re S.S., supra*, 90 Cal.App.5th at p. 703 ["[W]hen [social workers] already are having or planning a conversation, how long does this additional question take: 'Might this child be an Indian child?'"].)

As the result of DCFS's incomplete inquiry, there is a dearth of information about the ancestry of three of W.M.'s four grandparents. Paternal grandmother and paternal grandfather, though contacted or identified during the investigation, were not asked about their ancestry. On mother's side, no one furnished information about the maternal grandfather's heritage, though DCFS could have asked two maternal aunts who were contacted during its investigation. (Compare, *H.B., supra,* 92 Cal.App.5th at p. 721 [DCFS fulfilled duty of inquiry where it "inquired about Indian ancestry with representatives from both sides of two generational levels of H.B.'s family" and "contacted every person

---

[6]     Although not mentioned by mother, DCFS's reports reveal additional relatives who were apparently not asked about possible Indian ancestry. Father disclosed a second paternal aunt who lived in Indiana, and mother disclosed an aunt named "Jen." Father also reported speaking to paternal grandfather in August 2022.

its interviewees identified as a likely source of information about ancestry"].) We conclude DCFS's inquiry was inadequate to discharge its duty of inquiry under section 224.2.

DCFS argues that, even if its inquiry was inadequate, any error should be considered harmless. However, we cannot conclude DCFS's failure to ask known extended relatives about their Indian ancestry was harmless in light of *Dezi C., supra,* 16 Cal.5th 1112, which was published by our high court while this appeal was pending. *Dezi C.* resolved a split of authority regarding "whether a child welfare agency's failure to make the statutorily required initial inquiry under California's heightened ICWA requirements constitutes reversible error." (*Id.* at p. 1125.) Our high court concluded, "When a Cal-ICWA inquiry is inadequate, it is impossible to ascertain whether the agency's error is prejudicial." (*Id.* at p. 1136.) Our high court set out a bright line rule under which "error resulting in an inadequate initial Cal-ICWA inquiry requires conditional reversal with directions for the child welfare agency to comply with the inquiry requirement of section 224.2, document its inquiry in compliance with rule 5.481(a)(5), and when necessary, comply with the notice provision of section 224.3." (*Ibid.*)

Because we conclude DCFS's inquiry was insufficient, we must conditionally reverse the order terminating parental rights. (*Dezi C., supra*, 16 Cal.5th at p. 1152.) "It is only by conditionally reversing that we can ascertain whether error in the inquiry is prejudicial." (*Ibid.*)

11

## DISPOSITION

The order terminating parental rights is conditionally reversed.  We remand to the juvenile court with instructions to DCFS and the court to comply with the inquiry, notice, and documentation requirements of ICWA.  If the court finds an adequate further inquiry and due diligence has been conducted and concludes ICWA does not apply (§ 224.2, subd. (i)(2)), then it shall reinstate the order terminating parental rights.

MORI, Acting P. J.

We concur:

ZUKIN, J.

**SIGGINS, J.

---

** Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.